Jennie FRANKLIN and Elaine Quigley,
on Behalf of Wilford Lee Berry,
Jr., Petitioners–Appellees,

v.

Rodney L. FRANCIS, Warden,
Respondent–Appellant.

No. 98–3187.

United States Court of Appeals,
Sixth Circuit.

Argued March 24, 1998.

Decided May 22, 1998.

Randall L. Porter, David H. Bodiker, J. Joseph Bodine, Jr., Laurence E. Komp (argued), Public Defender's Office, Ohio Public Defender Com'n, Columbus, OH, for Petitioners–Appellees.

Simon B. Karas, Asst. Atty. Gen., (argued), Office of the Atty. Gen. of Ohio, Columbus, OH, Jeffrey S. Sutton, State Solicitation Admin., Columbus, OH, Sharon A. McClellan, Office of the Atty. Gen., Chief Capital Crimes Section, for Respondent–Appellant.

Before: KENNEDY, RYAN, and SILER, Circuit Judges.

## OPINION

SILER, Circuit Judge.

This is a suit for habeas corpus relief, pursuant to 28 U.S.C. § 2254, filed on behalf of Wilford Lee Berry, Jr., who has received a death sentence for murder from the State of Ohio. The petitioners are Jennie Franklin, his birth mother, and Elaine Quigley, his sister, acting as next friends for Berry. Suit was brought against Rodney L. Francis, the Warden of the Corrections Medical Center, where Berry is currently incarcerated. Upon the completion of two direct appeals through the Ohio state court system, the Ohio Supreme Court set an execution date for March 3, 1998.

Although Berry asserts that he waives his legal rights for further appeals, the petitioners filed this claim for relief a short time before the execution date. The district court granted a temporary stay of the execution. For reasons stated hereinafter, we will **vacate** the stay of execution.

## I. BACKGROUND

Berry was convicted in 1990 for the aggravated murder during the robbery of his employer, Charles Mitroff, the owner of a bakery in Cleveland, Ohio. An accomplice, Anthony Lozar, shot Mitroff in the torso with an SKS assault rifle. When Mitroff fell to the floor, he looked at Berry and said, "You shot me." When he begged for Berry to call for help, Berry shot Mitroff in the head. The two men took Mitroff's wallet and delivery van and buried the body. More details of the crime are outlined in *State v. Berry*, 72 Ohio St.3d 354, 650 N.E.2d 433 (1995), *cert. denied*, 516 U.S. 1097, 116 S.Ct. 823, 133 L.Ed.2d 766 (1996). After a trial by jury, Berry was sentenced to death.

The conviction and sentence were affirmed on appeal by the Ohio Court of Appeals in *State v. Berry*, No. 60531, 1993 WL 425370 (Oct. 21, 1993), and the Ohio Supreme Court in *Berry*, 72 Ohio St.3d 354, 650 N.E.2d 433. Throughout his appeals, Berry repeatedly indicated his preference to waive his rights on appeal. He wrote to his attorneys and to

other officials asking that he be allowed to waive his appellate rights and to receive the death penalty.

Thereafter, in 1995, the State asked the Ohio Supreme Court to appoint a psychiatrist to evaluate Berry's competence to waive collateral review of his sentence. The court granted the motion, *State v. Berry,* 74 Ohio St.3d 1470, 657 N.E.2d 511 (1995), and appointed Dr. Phillip J. Resnick, a psychiatrist, to evaluate Berry's competence under the following standard:

> A capital defendant is mentally competent to abandon any and all challenges to his death sentence, including appeals, state-post conviction collateral review, and federal habeas corpus, if he has the mental capacity to understand the choice between life and death and to make a knowing and intelligent decision not to pursue further remedies.

*State v. Berry,* 74 Ohio St.3d 1504, 659 N.E.2d 796 (1996). In directing Dr. Resnick, the court cited, *inter alia, Whitmore v. Arkansas,* 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990); *Gilmore v. Utah,* 429 U.S. 1012, 97 S.Ct. 436, 50 L.Ed.2d 632 (1976); and *Rees v. Peyton,* 384 U.S. 312, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966).

After Dr. Resnick submitted his assessment to the Ohio Supreme Court, the matter was remanded to the state trial court (Court of Common Pleas) to hold an evidentiary hearing on the issues of competency and waiver. Upon remand, the Ohio trial court appointed Dr. Robert Alcorn, another psychiatrist, who later submitted his report. Counsel for Berry called Dr. Sharon Pearson, a psychologist. At the hearing on competency, Drs. Resnick and Alcorn found Berry to be competent to waive his rights. Drs. Resnick and Alcorn diagnosed a mixed personality disorder with schitzotypal, borderline and antisocial features. However, Dr. Pearson found that Berry was not competent. She concluded that Berry suffered from schitzotypal disorder, a rigid thought process, a tendency toward extreme isolation and withdrawal, and a tendency to have psychotic episodes under stress.

The Public Defender also called Dr. Jeffrey L. Smalldon, a psychologist, who never examined Berry and had no opinion concerning his competence. He testified generally regarding schitzotypal personality disorder and its relevance in determining competence.

After hearing the evidence, the trial court on July 22, 1997, found that while Berry suffers from a mixed personality disorder with schitzotypal, borderline and antisocial features, he " 'is competent to forgo any and all further legal challenges.' " *State v. Berry,* 80 Ohio St.3d 371, 686 N.E.2d 1097, 1099 (1997). It further found that although Berry had no mental disease, his mixed personality disorder "does not prevent him from understanding his legal position and the options available to him, or from making a rational choice between those options." *Id.* In making the determination that Berry was competent, the trial court found that the testimony of Drs. Resnick and Alcorn was more credible and convincing than Dr. Pearson's conclusion that Berry was not competent. *Id.* The Ohio Supreme Court affirmed the trial court's determination of Berry's competence and further found that the trial court followed the criteria set out in *Rees,* 384 U.S. at 314, 86 S.Ct. 1505:

> "Whether he has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises."

*Berry,* 686 N.E.2d at 1101.

Between the time that the trial court ruled on Berry's competency and the time that the Ohio Supreme Court affirmed, Berry was involved in an incident at the penal institution where he was then being held, on September 5, 1997. He was assaulted by other inmates during a riot. His jaw and facial bones were broken, resulting in surgery and metal implants to repair the damage. He also hurt his right hand and had several broken ribs and bruised his internal organs. He was rendered unconscious by the beating. None of this information related to the beating was considered by the psychiatrist or psychologist who had examined Berry. The

Public Defender's request for an additional evaluation after the beating was denied by the Ohio Supreme Court. *State v. Berry,* 80 Ohio St.3d 1402, 684 N.E.2d 335 (1997). Counsel has never filed an affidavit from a treating physician that this injury caused brain damage to Berry.

Thereafter, the Ohio Supreme Court set an execution date, and the petitioners applied for a writ of habeas corpus. The district court held that it was not bound by the determination of competency from the Ohio Supreme Court, because the Ohio Supreme Court did not properly interpret the *Rees* case. When the Ohio Attorney General appealed to this court to set aside the stay of execution granted by the district court, we declined to rule on the motion until after a hearing on March 24, 1998. On March 3, 1998, the Warden applied to the United States Supreme Court to vacate the stay of execution, but that was denied. After hearing argument of counsel in court, we now rule on the motion to set aside the stay of execution.

## II. JURISDICTION

■ The petitioners have moved the court to dismiss the appeal by the Warden for want of jurisdiction. First, they assert that there is no final order from which the appeal is taken, as the district court has not entered an order determining the competency of Berry nor whether his mother and sister can proceed as next friends. *See In re Moser,* 69 F.3d 695 (3d Cir.1995). However, we have jurisdiction to consider this matter, as the effect of a stay is injunctive in nature. Therefore, there is jurisdiction under either 28 U.S.C. § 1292(a)(1) or the All Writs Act. *In re Moser,* 69 F.3d 690, 691 (3d Cir.1995); *see In re Sapp,* 118 F.3d 460, 464 (6th Cir. 1997); *In re Parker,* 49 F.3d 204, 213 (6th Cir.1995).

■ The petitioners have filed another motion to dismiss, primarily on the basis that the United States Supreme Court denied the application to vacate the stay of execution. They argue that this denial constitutes res judicata or the law of the case. Second, they assert the case is moot, due to the fact that there is currently no execution date set for Berry. These arguments have no merit. First, the denial of the application to set aside the stay is not a ruling on the merits of the case. *See Hughes Tool Co. v. Trans World Airlines,* 409 U.S. 363, 365 n. 1, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973). Second, the appeal is not moot, because the stay currently precludes the Ohio Supreme Court from setting another execution date. If the stay is lifted, then the state could set another execution date. Therefore, finding that this court has jurisdiction, we proceed to rule on the merits.

## III. MERITS

■ As the district court observed, the Supreme Court has stated:

We realize that last minute petitions from parents of death row inmates may often be viewed sympathetically. But federal courts are authorized by the federal habeas statutes to interfere with the course of state proceedings only in specified circumstances. Before granting a stay, therefore, federal courts must make certain that an adequate basis exists for the exercise of federal power.

*Demosthenes v. Baal,* 495 U.S. 731, 737, 110 S.Ct. 2223, 109 L.Ed.2d 762 (1990). In this case, the court must first decide whether the petitioners have standing to proceed as next friends. If they do not, then Berry may waive his legal rights. In order for the petitioners to proceed as next friends, they must show that Berry is unable to litigate his own cause due to mental capacity and that the next friend is dedicated to the best interests of Berry. *Whitmore v. Arkansas,* 495 U.S. 149, 163–65, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). Here, there is no dispute that the mother and sister are dedicated to the best interests of Berry. However, there is a conflict on whether Berry is incompetent to proceed. The burden is on the next friend "clearly to establish the propriety of his status and thereby justify the jurisdiction of the court." *Id.* at 164, 110 S.Ct. 1717. The district court recognized these criteria but found that the Ohio Supreme Court did not follow the competency requirements from *Rees,* 384 U.S. at 314, 86 S.Ct. 1505.

The district court concluded that the language from *Rees* suggests that a competency decision "necessarily requires two inquiries." It found that the court must first determine the capacity of the person in question. Then, if the person has the capacity to make the decision, the court must proceed to determine whether the person is "suffering from a mental disease, disorder, or defect which may substantially affect his capacity." *Id.*

We realize the difficulty the district court had in interpreting *Rees* due to the expedited nature of the proceeding, but we disagree with its conclusion. The Ohio Supreme Court properly followed the test of competence from *Rees.* The test is not conjunctive but rather is alternative. Either the condemned has the ability to make a rational choice with respect to proceeding *or* he does not have the capacity to waive his rights as a result of his mental disorder. This conclusion is in line with all of the Supreme Court decisions and other court decisions since *Rees* was decided in 1966. In *Demosthenes,* 495 U.S. at 734, 110 S.Ct. 2223; *Whitmore,* 495 U.S. at 165, 110 S.Ct. 1717; and *Gilmore,* 429 U.S. at 1016–17, 97 S.Ct. 436, the Court has asked only if the waiver was knowing, intelligent and voluntary. The best explanation of the *Rees* test is found in *Smith v. Armontrout,* 812 F.2d 1050 (8th Cir.1987), relied upon significantly by the Ohio Supreme Court in its decision. In *Smith,* experts agreed, and the district court found, that *Smith* suffered from mental disorders. *Id.* at 1055. However, some experts concluded that he was incompetent because of his mental disorders and others disagreed, finding that he was competent to waive his rights to further appeal. *Id.*

As the *Smith* case decided:

[W]e think it very probable, given the circumstances that perforce accompany a sentence of death, that in every case where a death-row inmate elects to abandon further legal proceedings, there will be a possibility that the decision is the product of a mental disease, disorder, or defect. Yet, *Rees* clearly contemplates that competent waivers are possible ... and there is little point in conducting a competency inquiry if

a finding of incompetency is virtually a foregone conclusion.

*Id.* at 1057 (citation omitted). This is the same conclusion that is implicitly reached in *Lonchar v. Zant,* 978 F.2d 637 (11th Cir. 1992); and *Rumbaugh v. Procunier,* 753 F.2d 395 (5th Cir.1985), where the defendant in both cases was suffering from a mental disorder but was able to rationally choose between his options of pursuing an appeal or waiving further legal rights.

Therefore, pursuant to 28 U.S.C. § 2254(d), because the Ohio Supreme Court decision was not contrary to or did not involve an unreasonable application of clearly established federal law, we are bound by the determination of the Ohio Supreme Court that Berry was competent. Because he is competent, the petitioners herein do not have standing to pursue a writ of habeas corpus on Berry's behalf. Thus, the district court did not have jurisdiction to entertain the petition and the stay should not have been granted.

In conclusion, the stay is **vacated**, and this matter is **remanded** to the district court for further proceedings consistent with this decision.