Jennie **FRANKLIN**, birth mother, and Elaine Quigley, sister, as next friends for Wilford Lee Berry, Petitioners,

v.

Rodney L. **FRANCIS**, Warden— Corrections Medical Center, Respondent.

No. C1–98–136.

United States District Court, S.D. Ohio, Eastern Division.

Jan. 29, 1999.

J. Joseph Bodine, Jr., Jonathan W. Woodman, Laurence E. Komp, Ohio Public Defender Com'n, Columbus, OH, Randall Lee Porter, State Public Defender Office, Fed. Death Penalty Resource, Columbus, OH, for Wilford Lee Berry, Jennie Franklin, Elaine Quigley.

Simon Barry Karas, Bradley Davis Barbin, Ohio Atty. General, Columbus, OH, for Rodney L. Francis.

### OPINION & ORDER

MARBLEY, District Judge.

This cause comes before the Court on Petitioners' Motion to Alter or Amend Judgment based on ostensibly new evidence of Wilford Lee Berry's incompetence. Because this Court does not have jurisdiction to entertain this claim, the Motion must be **DENIED**.

### I. Procedural History

On July 3, 1990, a jury found Wilford Lee Berry guilty of aggravated murder, aggravated robbery and aggravated burglary in the death of Charles Mitroff. When the mitigation phase of Berry's trial commenced on July 30, 1990, Berry's counsel raised, for the first time, the issue of his competence to proceed. The trial court denied Berry's motion for a new trial and did not order a competency hearing. The case proceeded to verdict and sentence without Berry ever having been adjudicated competent to stand trial. The jury recommended a death sentence, after Berry specifically asked the jurors to sentence him to death. The trial court accepted the jury's recommendation and imposed a single death sentence. The Court of Appeals and the Supreme Court of Ohio affirmed Berry's conviction and death sentence. *See State v. Berry*, 72 Ohio St.3d 354, 650 N.E.2d 433 (1995).

After his direct appeal, Berry represented to the state courts that he wished to forego all further challenges to his conviction and sentence, and wanted his death sentence to be imposed. Berry's counsel, the Ohio Public Defender, claimed that he was not mentally competent to make that decision. The Supreme Court of Ohio ordered an evaluation of Berry's competence. After several doctors evaluated Berry, the trial court held an evidentiary hearing and issued an opinion on July 22, 1997, finding Berry competent to forego all further legal challenges. On September 5, 1997, inmates in Berry's cell block assaulted and severely beat Berry during a prison riot. The Public Defender requested an additional competency evaluation in light of the significant injuries Berry sustained from this beating. The Ohio Supreme Court denied the Public Defender's request and, on December 3, 1997, affirmed the trial court's finding that Berry was competent. *See State v. Berry*, 80 Ohio St.3d 371, 686 N.E.2d 1097 (1997). Execution was set for March 3, 1998.

■ On February 19, 1998, Jennie Franklin, Berry's mother, and Elaine Quigley, his sister, in their capacity as Berry's next friends ("Petitioners"), filed a petition for a writ of habeas corpus on Berry's behalf, pursuant to 28 U.S.C. § 2251, to stay Berry's execution. Such petition may be brought by next friends only if they can establish meaningful evidence that the prisoner is incompetent to petition on his own behalf. *See Whitmore v. Arkansas*, 495 U.S. 149, 165, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). This

Court recognized that the Ohio Supreme Court's prior conclusion that Berry was competent to waive his appeals was binding unless, as a matter of law, the Ohio court's decision was either contrary to, or an unreasonable application of, federal law. *See* 28 U.S.C. § 2254(d). Finding that the Ohio Supreme Court had misapplied the standard to be employed in competence determinations announced in *Rees v. Peyton*, 384 U.S. 312, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966), this Court stayed Berry's execution and ordered a new competency hearing to be conducted using the specific legal standard articulated in *Rees. See Franklin v. Francis*, 997 F.Supp. 916 (S.D.Ohio 1998). Respondent appealed this Court's decision, and the Sixth Circuit reversed, holding that the Ohio Supreme Court's interpretation of *Rees* was not a misapplication of federal law. *See Franklin v. Francis*, 144 F.3d 429 (6th Cir.1998). The Sixth Circuit concluded that this Court did not have jurisdiction to hear a petition from Berry's next friends, or to issue a stay of execution. The stay was thus vacated. Petitioners' subsequent petition for certiorari in the Supreme Court was denied. The Sixth Circuit issued a mandate remanding the case to this Court with instructions to dismiss for lack of jurisdiction. On November 19, 1998, this Court dismissed Petitioners' petition pursuant to the Sixth Circuit's mandate.

### II. Petitioners' Motion to Alter or Amend Judgment

On December 7, 1998, after this Court had dismissed *Franklin*, Petitioners filed a Motion to Alter or Amend Judgment, claiming to have discovered new evidence of Berry's incompetence after Respondent disclosed several documents pursuant to a *Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986), inquiry.[1] Petitioners assert that Respondent possessed this evidence prior to this Court's dismissal, but only disclosed the information after the dismissal, and that the evidence sheds new light on Berry's competence. Petitioners claim that

Respondent withheld details regarding the extent of the injuries Berry sustained in the September 5, 1997, prison beating, specifically, that Berry was unconscious for some period of time after the beating occurred. In addition, they assert that Berry now suffers from an adjustment disorder which was not previously disclosed.

Petitioners offer two bases to support their contention that this new evidence warrants review by this Court. First, Petitioners argue the new evidence is significant enough to require amending judgment pursuant to Fed. R.Civ.P. 59(e). Second, Petitioners claim that Respondent's failure to disclose this information earlier constitutes "bad faith" which "calls into question the integrity of the proceedings," and which is an independent ground for re-opening this case. Respondent counters that: (1) the documents present nothing new which calls into question the determination of the Ohio Supreme Court and Sixth Circuit; (2) the mandate of the Sixth Circuit deprives this court of any jurisdiction over Petitioner's motion; and (3) no bad faith motive existed for withholding the documents.

### III. Analysis

### A. Petitioners May Not Amend Under Rule 59.

Fed.R.Civ.P. 59(e) provides that litigants may move to alter or amend a judgment within ten days of the judgment's entry. A court may alter or amend its judgment for one of three reasons: (1) because of an intervening change of controlling law; (2) because evidence not previously available has become available; or (3) because such action is necessary to correct a clear error of law or prevent a manifest injustice. *See Petition of U.S. Steel Corp.*, 479 F.2d 489, 494 (6th Cir.1973). Evidence is "unavailable" when it could not, in the exercise of reasonable diligence, have been previously submitted. *See Javetz v. Board of Control, Grand Valley State Univ.*, 903 F.Supp. 1181, 1191 (W.D.Mich.1995). Petitioners assert that amending this Court's

---

**1.** In *Ford*, the Supreme Court held that the Eighth Amendment's prohibition against cruel and unusual punishment forbids states from inflicting the penalty of death upon a prisoner who

is insane. This Court anticipates that the Ohio Supreme Court will look carefully at the new evidence in determining Berry's mental state under *Ford* before allowing Berry's execution.

judgment is appropriate under either the "new evidence" or the "manifest injustice" prongs of this test.

 Petitioners' argument, however, misconstrues the issue before this Court. Under Rule 59, this Court can only consider issues relevant to the merits of the judgment sought to be altered or amended. *See, e.g., Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989) (postjudgment motion is properly considered under Rule 59(e) "where it involves reconsideration of matters properly encompassed in a decision on the merits"). In this case, the merits of this Court's previous judgment went to the state court's interpretation of federal law. Although the new evidence adduced by Petitioners may, in fact, impact directly on the question of Berry's actual competence, this Court has never had the opportunity to consider Berry's actual competence. The *only* issue this Court considered in *Franklin v. Francis* was whether the Ohio Supreme Court misapplied federal law in conducting its competency hearing.

Federal courts have very limited powers of collateral review of state judgments, particularly when the state court decision is attacked by "next friends" of a prisoner, rather than by the prisoner himself. In order to bring an appeal on behalf of a prisoner, next friends must be able to demonstrate that the prisoner is "unable to litigate his own cause due to mental incapacity." *Whitmore*, 495 U.S. at 165, 110 S.Ct. 1717. In this case, Petitioners, as Berry's next friends, filed a habeas corpus petition in this Court after the Ohio Supreme Court had already ruled that Berry was competent to waive his appeals. In evaluating Petitioner's motion, this Court recognized that the Ohio court's decision regarding Berry's competence was binding (and thus this Court did not have jurisdiction to hear Petitioners' claims), unless the Ohio Supreme Court had misapplied some aspect of federal law in its competence determination. *See* 28 U.S.C. § 2254(d).

This Court concluded that the Ohio Supreme Court had misapplied federal law by modifying the standard for competence determinations articulated in *Rees*. Therefore, this Court stayed Berry's execution pending a new competency hearing, to be conducted utilizing a corrected *Rees* standard. Respondent appealed this decision. The Sixth Circuit approved the Ohio Supreme Court's interpretation of the *Rees* standard. *See Franklin*, 144 F.3d at 433. Accordingly, the Sixth Circuit concluded:

> we are bound by the determination of the Ohio Supreme Court that Berry was competent. Because he is competent, the petitioners herein do not have standing to pursue a writ of habeas corpus on Berry's behalf. Thus, the district court did not have jurisdiction to entertain the petition and the stay should not have been granted.

*Id.* The Sixth Circuit explicitly held that the Ohio courts had properly concluded that Berry was competent, and that, therefore, the federal courts have no jurisdiction to evaluate a habeas petition brought by his next friends. This Court is clearly bound by the terms of the appellate ruling, as it is the law of the case. *See Petition of U.S. Steel Corp.*, 479 F.2d at 493. After the U.S. Supreme Court denied certiorari, the Sixth Circuit issued its mandate, instructing this Court to dismiss the case for lack of jurisdiction, which this Court did on November 19, 1998.

Now, Petitioners claim that new evidence of Berry's incompetence requires the Court to alter or amend its judgment under Rule 59. Petitioners' argument fails because Berry's actual competence was never at issue in this Court. Litigants may not utilize Rule 59 to raise issues unrelated to the merits of the judgment sought to be amended. *See Osterneck*, 489 U.S. at 174, 109 S.Ct. 987. The only issue this Court had jurisdiction to consider, i.e., the merits of the judgment, was whether the Ohio Supreme Court used the correct legal standard to determine Berry's competence. When the Sixth Circuit approved the Ohio court's determination that Berry is competent, it deprived this Court of jurisdiction to entertain a habeas claim from Berry's next friends. If Petitioners had new evidence that the competency standard employed by the Ohio courts was flawed, this Court would have jurisdiction to consider it. But that is not the case here. Petitioners' new evidence does not address the Ohio Supreme Court's legal analysis, but raises only one issue: Berry's actual competence. Sim-

ply put, this Court has never had authority to consider *any* evidence—new or old—of Berry's actual competence.[2] The new evidence has no bearing upon the prior legal determination of this Court, and, therefore, cannot be the basis for amending its prior judgment pursuant to Fed.R.Civ.P. 59.

In addition, when a federal habeas petitioner presents newly discovered evidence which places the case in a significantly different posture, the state courts must be given the first opportunity to consider the evidence in that posture. *See Sampson v. Love*, 782 F.2d 53, 55 (6th Cir.1986). It is a petitioner's burden to prove that she has exhausted available state remedies. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir.1994). Here, if the newly discovered evidence does significantly change the posture of this case, as Petitioners argue it does, then the Ohio state courts first must be given the opportunity to consider the evidence before this Court may address it. Petitioners have not presented the new evidence in state court; therefore they have not met their burden of proving they exhausted state remedies with regard to this evidence. At this point, the issues raised by the new evidence are appropriate for consideration only in the Ohio state courts.

### B. The Court Does Not Have Jurisdiction to Consider Petitioner's Bad Faith Argument

Petitioners assert that Respondent acted in bad faith by failing to disclose the new evidence at an earlier date. Petitioners contend this bad faith is an independent ground for reopening the case, as it "has called into question the integrity of the proceedings" in this Court. Respondent argues that none of the documents presented any new information, and insists that it disclosed all relevant evidence with staunch veracity.

It is not necessary for this Court to decide whether Respondent acted in bad faith. As discussed above, the evidence Petitioners proffer has no bearing upon the sole issue that was before this Court. Even assuming the evidence of Berry's health is new, and was excluded from this Court's prior determination, it would not have affected the integrity of this Court's proceedings with regard to the *Rees* issue. That issue has been finally decided, and any purported "bad faith" by Respondent with regard to evidence unconnected to this inquiry could have had no effect on the outcome. As the integrity of this Court's proceedings could not have been affected by any alleged failure to disclose this evidence, Petitioners' bad faith argument is unavailing.

### Conclusion

The Sixth Circuit divested this Court of jurisdiction when it held that the Ohio Supreme Court correctly interpreted the *Rees* standard in determining Berry's competency. This Court is therefore bound by the Ohio court's conclusion that Berry was competent when he waived his right to further appeals, and Petitioners are legally precluded from bringing their habeas petition in this Court. Petitioners' evidence only goes to the issue of Berry's actual competence, and this Court has never had jurisdiction to consider that issue. The evidence in question, even if it is new, would have had no bearing on this Court's, or the Sixth Circuit's, rulings with regard to correctness of the application of the *Rees* standard. Therefore, the discovery of this evidence cannot be the basis for this Court to revisit the case of *Franklin v. Francis* under Fed.R.Civ.P. 59(e), or to remedy the alleged bad faith of Respondent.

For the foregoing reasons, Petitioners Motion to Alter or Amend Judgment must be **DENIED.**

**IT IS SO ORDERED.**

---

2. Because Berry's actual competence is not at issue in this Court, Petitioners' argument that competency is fluid is inapposite. It is not this Court's place to determine whether Berry, today, is competent to waive his appeals, but only to decide whether the Ohio courts used the correct legal standard in determining Berry's competence. That question has been answered, in the affirmative, by the Sixth Circuit. Further, the authority upon which Petitioners rely for their fluidity argument, *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), applies only to trial proceedings, which are fluid by nature, not to a waiver of rights, which, by nature, is a discrete and final action.