**Gregory R. BULGER, Petitioner,**

v.

**Bruce CURTIS, Respondent.**

**No. 00–10476–BC.**

United States District Court,
E.D. Michigan,
Northern Division.

July 16, 2004.

---

David A. Moran, Detroit, MI, for Petitioner.

Brenda E. Turner, Laura G. Moody, Michigan Department of Attorney General, Lansing, MI, for Respondent.

***OPINION AND ORDER CONDITIONALLY GRANTING THE PETITION FOR A WRIT OF HABEAS CORPUS***

DAVID M. LAWSON, District Judge.

Petitioner Gregory Bulger, a state prisoner presently confined at the Ionia Maximum Correctional Facility in Ionia, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner pleaded guilty in the Saginaw County Circuit Court on July 10, 1995 to possession with intent to deliver less than fifty grams of cocaine and possession of marijuana. He was subsequently sentenced to six to twenty years of imprisonment on the cocaine conviction and a concurrent jail sentence on the marijuana conviction. In his pleadings, the petitioner asserts that he was denied the assistance of counsel in seeking leave to appeal his convictions in violation of his federal constitutional rights. The Court agrees that the petitioner's constitutional rights were violated, and further finds that

the Michigan Supreme Court's decision holding otherwise was an objectively unreasonable application of clearly established Supreme Court precedent. Accordingly, the Court will conditionally grant the petition for a writ of habeas corpus and direct the State of Michigan either to appoint counsel to assist the petitioner in his pursuit of leave to appeal his convictions or release him from its unlawful custody.

## I.

On July 10, 1995, in the Saginaw County Circuit Court, the petitioner pleaded guilty to counts I and V of a criminal information filed against him charging him with possession with intent to deliver less than fifty grams of cocaine (count I) and possession of marijuana (Count V). He also pleaded guilty to being an habitual offender, third offense. In exchange for the guilty plea, the State agreed to dismiss counts II, III, IV, and VI of the information. *See* July 10, 1995 Plea Hearing Tr. at 4. At the plea hearing, the defendant, under oath, stated that he understood the nature of the charges made against him, he was freely and voluntarily pleading guilty to the charges, he understood the possible sentence that could be imposed as a result of his guilty plea, and he was waiving his right to jury trial. The following colloquy then took place between the court and the petitioner:

> The Court: Do you understand that since you are voluntarily pleading guilty, that any appeal from the conviction and sentence pursuant to your plea of guilty will be by Application for Leave to Appeal and not as a matter of right; in other words, the appellate court is not obligated to hear your appeal if they choose not to do so?

Defendant: Yes.

*Id.* at 8–9.

On August 17, 1995, the petitioner was sentenced to six to twenty years with 145 days credit on count I, and a concurrent term of 145 days in the county jail with credit for time served on count V. The court stated the following at the sentencing hearing:

> You're entitled to an appellate review of your conviction and sentence. If you cannot afford to hire an attorney to represent you on appeal, the Court will appoint an attorney and furnish the attorney with the portions of the transcript and record that the attorney needs.
>
> Request for the appointment of an attorney must be made in writing, sent directly to me at my address here in the courthouse within 42 days.
>
> I'm handing your attorney written notice of your right to timely appeal, ask that you sign same indicating you received your appeal rights

August 17, 1995 Sentencing Hearing Tr. at 7–8.

Following sentencing, the petitioner timely requested the appointment of appellate counsel, alleging that he could not afford to hire an attorney of his own choosing because he lacked the financial resources to do so. The trial court denied the request because his conviction was the result of a voluntary plea of guilty. *People v. Bulger*, No. 95–10587–FH–5 (Saginaw Co. Cir. Ct. Sept. 18, 1995). The petitioner and thirteen other indigent Saginaw County defendants who had been convicted on their respective guilty pleas filed a complaint against the trial court in the Michigan Supreme Court. That court dismissed the complaint, but remanded the case to the trial court with instructions to appoint counsel for the limited purpose of filing a motion with the trial court concerning

whether the petitioner and the other complainants were entitled to the appointment of appellate counsel. *Bulger v. Judges of Tenth Cir.*, 562 N.W.2d 200 (Mich.1997).

On remand, the trial court appointed the State Appellate Defender Officer to represent the petitioner on his motion and any related appeals. Following briefing and a hearing, the trial court again denied the petitioner's request for appointed appellate counsel, finding that the Fourteenth Amendment did not require appointment of appellate counsel. *People v. Bulger*, 95010587–FH–5 (Saginaw Co. Cir. Ct. Jan. 8, 1998). The petitioner filed an appeal with the Michigan Court of Appeals, which remanded the case to the trial court for reconsideration in light of an intervening Michigan appellate decision. *People v. Bulger*, No. 209031 (Mich.Ct.App. July 21, 1998).

The petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was granted. In a 4–2 decision, the Michigan Supreme Court held that indigent defendants who plead guilty, guilty but mentally ill, or *nolo contendere* do not have a federal constitutional right to counsel for the purpose of appealing their plea-based convictions or sentences to the Michigan appellate courts. The Michigan Supreme Court vacated the Michigan Court of Appeal's order of remand and instructed the petitioner to proceed with his appeal without the assistance of appointed appellate counsel. *People v. Bulger*, 462 Mich. 495, 614 N.W.2d 103 (Mich.2000). The petitioner then sought a writ of certiorari with the United States Supreme Court, which was denied. *Bulger v. Michigan*, 531 U.S. 994, 121 S.Ct. 486, 148 L.Ed.2d 459 (2000).

The petitioner then filed through counsel the present petition for a writ of habeas corpus on December 13, 2000 asserting that he was denied his constitutional right to counsel when the Michigan courts refused to appoint counsel to assist him in seeking leave for review of his guilty-plea-based convictions in his first appeal to the state intermediate appellate court. The respondent filed an answer to the petition on June 7, 2001 asserting that it should be denied for lack of merit. The petitioner filed a reply to that answer on June 15, 2001, and the respondent answered that reply on June 26, 2001.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214 (April 24, 1996), govern this case because the petitioner filed this habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). That Act "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, ——, 123 S.Ct. 2527, 2534, 156 L.Ed.2d 471 (2003).

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis,* 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins,* 539 U.S. at ——, 123 S.Ct. at 2535 (quoting *Williams v. Taylor,* 529 U.S. 362, 409, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); internal quotes omitted). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also Cremeans v. Chapleau,* 62 F.3d 167, 169 (6th Cir.1995) ("We give complete deference to state court findings unless they are clearly erroneous.").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. ... A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

The Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409, 120 S.Ct. 1495. The Court defined "unreasonable application" as follows:

[A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. ... [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law.... Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410–11, 120 S.Ct. 1495. *Ketchings v. Jackson,* 365 F.3d 509, 511 (6th Cir.2004); *Rockwell v. Yukins,* 341 F.3d 507, 512 (6th Cir.2003) (en banc) *cert. denied,* —— U.S. ——, 124 S.Ct. 1601, 158 L.Ed.2d 247 (2004); *Lewis v. Wilkinson,* 307 F.3d 413, 418 (6th Cir.2002).

The parties agree that the two Supreme Court precedents at the heart of this case are *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), and *Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974). In *Douglas,* the Court held that the equal protection clause compelled the State of California to appoint counsel for indigent defendants in their first appeal of right. Concluding that "there can be no equal justice where the kind of an appeal a man enjoys 'depends on the amount of money he has,'" *Douglas,* 372 U.S. at 355, 83 S.Ct. 814 (quoting *Griffin v. Illinois,* 351 U.S. 12, 19,

76 S.Ct. 585, 100 L.Ed. 891 (1956)), the Court found California's system of merit-screening pauper appeals to be unconstitutional:

> In spite of California's forward treatment of indigents, under its present practice the type of an appeal a person is afforded in the District Court of Appeal hinges upon whether or not he can pay for the assistance of counsel. If he can the appellate court passes on the merits of his case only after having the full benefit of written briefs and oral argument by counsel. If he cannot the appellate court is forced to prejudge the merits before it can even determine whether counsel should be provided. At this stage in the proceedings only the barren record speaks for the indigent, and, unless the printed pages show that an injustice has been committed, he is forced to go without a champion on appeal. Any real chance he may have had of showing that his appeal has hidden merit is deprived him when the court decides on an ex parte examination of the record that the assistance of counsel is not required.

*Id.* at 355–56, 83 S.Ct. 814. The Court further explained why such a two-tiered system is violative of the Equal Protection Clause:

> The present case, where counsel was denied petitioners on appeal, shows that the discrimination is not between "possibly good and obviously bad cases," but between cases where the rich man can require the court to listen to argument of counsel before deciding on the merits, but a poor man cannot. There is lacking that equality demanded by the Fourteenth Amendment where the rich man, who appeals as of right, enjoys the benefit of counsel's examination into the record, research of the law, and marshaling of arguments on his behalf, while the indigent, already burdened by a preliminary determination that his case is with-

out merit, is forced to shift for himself. The indigent, where the record is unclear or the errors are hidden, has only the right to a meaningless ritual, while the rich man has a meaningful appeal.

*Id.* at 357–58, 83 S.Ct. 814. The Court did hold that States were generally free to make rational distinctions in the construction of their appellate frameworks, as long as "an unconstitutional line has [not] been drawn between rich and poor." *Id.* at 357, 83 S.Ct. 814.

In *Ross,* the Court reiterated that "a State cannot arbitrarily cut off appeal rights for indigents while leaving open avenues of appeal for more affluent persons." 417 U.S. at 607, 94 S.Ct. 2437. Recognizing that *Douglas* appeared to rest on both a due process and an equal protection framework, the Court nonetheless held that neither clause of the Fourteenth Amendment compelled States to provide the assistance of counsel to defendants for the pursuit of a second, discretionary appeal to a state supreme court. *Id.* 610, 94 S.Ct. 2437. "The question is not one of absolutes, but one of degrees," *id.* at 612, 94 S.Ct. 2437, and the distinction between an initial appeal of right and a further discretionary appeal to a higher state court survived constitutional scrutiny. Several considerations informed the Court's decision. First, and most important, by the time a defendant sought review by the state's highest court, he already will have had the benefit of counsel in the preparation of his appeal of right:

> We do not believe that it can be said, therefore, that a defendant in respondent's circumstances is denied meaningful access to the North Carolina Supreme Court simply because the State does not appoint counsel to aid him in seeking review in that court. At that stage he will have, at the very least, a transcript or other record of trial pro-

ceedings, a brief on his behalf in the Court of Appeals setting forth his claims of error, and in many cases an opinion by the Court of Appeals disposing of his case. These materials, supplemented by whatever submission respondent may make pro se, would appear to provide the Supreme Court of North Carolina with an adequate basis for its decision to grant or deny review.

*Id.* at 615, 94 S.Ct. 2437. Second, the primary function of the North Carolina Supreme Court was not to correct trial errors but rather to address that small portion of cases which it felt would materially contribute to the State's jurisprudence. There was no reason to believe that the materials generated through the initial presentation of a defendant's position by his attorney in the first appeal, combined with the decision of an intermediate court, would not be adequate to bring such issues to the high court's attention. *Id.* at 615, 94 S.Ct. 2437. Of course, having the assistance of counsel would be helpful in pursuit of a discretionary appeal. Nonetheless,

> the fact that a particular service might be of benefit to an indigent defendant does not mean that the service is constitutionally required. The duty of the State under our cases is not to duplicate the legal arsenal that may be privately retained by a criminal defendant in a continuing effort to reverse his conviction, but only to assure the indigent defendant an adequate opportunity to present his claims fairly in the context of the State's appellate process.

*Id.* at 616, 94 S.Ct. 2437.

### III.

The petitioner's sole claim upon habeas review is that the Michigan courts have refused to appoint appellate counsel to assist him, an indigent, in seeking leave to appeal his guilty plea convictions before the Michigan Court of Appeals in violation of his federal constitutional right to counsel. In modern times, all Michigan criminal defendants enjoyed the right to appeal to the state's intermediate appellate court regardless of whether their convictions were based on guilty pleas or trials. *See* Mich. Const. art. 1, § 20 (1963); *People v. Smith,* 402 Mich. 72, 259 N.W.2d 558 (1977). Indigent defendants also enjoyed the right to the assistance of appointed counsel on appeal even in guilty-plea-based convictions, and the practice of appointing counsel in such cases was common. *See People v. Gazaway,* 35 Mich.App. 39, 42, 192 N.W.2d 122 (1971). However, in 1994 the Michigan constitution was amended by voter initiative and now provides that criminal defendants who have pleaded guilty to a crime can appeal only by leave of court. *See* Mich. Const. art. 1, § 20 (1994). The Michigan constitution further specifies that an accused has the right "as provided by law, when the trial court so orders, to have such reasonable assistance as may be necessary to perfect and prosecute an appeal." *Ibid.* Michigan statutory law states that appeals from plea-based convictions shall be by application for leave to appeal. *See* Mich. Comp. Laws § 770.3(1)(d).

At the time the petitioner requested appointment of counsel in the state trial court, trial judges exercised their discretion in determining whether to appoint counsel to assist defendants who had pleaded guilty or *nolo contendere* in seeking leave to appeal to the Michigan Court of Appeals. As noted above, at sentencing the petitioner in this case was informed that he could submit a request for counsel to assist him in filing his first appeal. He was never informed that his guilty plea constituted a waiver of his right to counsel on appeal, nor did he ever knowingly relinquish that right on this record. The Michigan Legislature subsequently enacted Mich. Comp. Laws § 770.3a, effective April

1, 2002, which provides that "a defendant who pleads guilty, guilty but mentally ill, or nolo contendere, shall not have appellate counsel appointed for review of the defendant's conviction or sentence." The statute allows for certain exceptions, requiring that counsel be appointed if the prosecuting attorney seeks leave to appeal, the defendant's sentence exceeds the upper limits of the minimum sentence range of the applicable sentencing guidelines, the Michigan Court of Appeals or Michigan Supreme Court grants leave to appeal, or the defendant entered a conditional plea. Mich. Comp. Laws § 770.3a(2). A trial court may also appoint appellate counsel for a defendant who pleads guilty if the defendant seeks leave to appeal a sentence based upon the alleged improper scoring of an offense variable or a prior record variable, the defendant objected to the scoring or otherwise preserved the matter for appeal, and the sentence imposed was an upward departure from the upper limit of the minimum sentence range that the defendant alleges should have been scored.

The Michigan Supreme Court considered whether the trial court's refusal to appoint counsel to the petitioner in seeking leave to appeal his guilty-plea-based conviction violated state and federal law and held that "neither the state nor the federal constitution requires the appointment of counsel under these circumstances. Under our federalist scheme of government, Michigan remains free to decide the conditions under which appellate counsel will be provided where our state constitution commands that the mechanism of appellate review is discretionary." *Bulger*, 462 Mich. at 499, 614 N.W.2d at 104–05.

In a recent decision, the United States Court of Appeals for the Sixth Circuit disagreed. *See Tesmer v. Granholm*, 333 F.3d 683 (6th Cir.2003) (en banc), *cert. granted sub nom Kowalski v. Tesmer*, —— U.S. ——, 124 S.Ct. 1144, 157 L.Ed.2d

1041 (2004). There, three indigent defendants and two defense attorneys sued three Michigan state court judges arguing that the categorical denial of appellate counsel to indigent criminal defendants who had pleaded guilty and wished to pursue leave to appeal their convictions or sentences was unconstitutional. The Sixth Circuit agreed with the plaintiffs that Michigan's denial of counsel in these circumstances violated the Fourteenth Amendment. Although acknowledging that States have a fundamental interest in the finality of a guilty plea, *see Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), the Sixth Circuit nonetheless concluded that under *Douglas* and *Ross*, "appellate processes ... may not be implemented in a manner that discriminates based on indigency." *Tesmer*, 333 F.3d at 700. The Sixth Circuit noted that even when standard procedures were followed, federal courts on habeas review still find error in state courts' acceptances of guilty pleas. *Ibid.* A plea of guilt under Michigan law also does not waive jurisdictional or double jeopardy claims, which "are legally complex to a layperson" trying to intelligibly present them to an appellate court. *Ibid.* Finally, even though a recent statutory enactment provided an appeal as of right when a sentence exceeds the guideline range, no such right exists for defendants seeking to challenge a sentence that falls within the guideline range, regardless of the basis for the imposition of sentence. *Ibid.* In light of these distinctions, the Sixth Circuit found that the denial of counsel to these defendants "violates the due process provision of the Fourteenth Amendment to the United States Constitution, and is thus unconstitutional." *Id.* at 701.

However, the Sixth Circuit's findings do not end this Court's inquiry. As the Supreme Court made clear in *Williams*, a federal habeas court may not simply grant

the writ because the State court's decision was erroneous; rather, that decision must be contrary to, or an unreasonable application of, clearly established Supreme Court precedent. *See* 529 U.S. at 410, 120 S.Ct. 1495; 28 U.S.C. § 2254(d)(1).

## A.

The Court finds that the Michigan Supreme Court's decision rejecting this petitioner's claims was not contrary to Supreme Court precedent. Such a situation arises only if the state court "arrives at a conclusion opposite to that reached by this Court on a question of law" or reaches the opposite result of a Supreme Court decision on materially indistinguishable facts. *Williams,* 529 U.S. at 405, 406, 120 S.Ct. 1495; *see Doan v. Brigano,* 237 F.3d 722, 729 (6th Cir.2001). Neither scenario is present in this case. The parties agree that the precise question in this case—the right to counsel on an initial, discretionary appeal of a criminal conviction—has not been specifically addressed by any Supreme Court precedent. The Sixth Circuit in *Tesmer* itself recognized that it was "left to fill in this gap" between *Douglas* and *Ross* in adjudicating the constitutionality of Michigan's system of appointment of counsel for indigent defendants seeking to appeal their convictions. *Tesmer,* 333 F.3d at 696.

The Michigan Supreme Court's decision rejecting the petitioner's claims therefore cannot be said to be contrary to clearly established Supreme Court precedent, and no relief is available on this basis. *See* 28 U.S.C. § 2254(d)(1).

## B.

The Michigan Supreme Court's decision fares less well, however, when its objective reasonableness is considered. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Castleberry v. Brigano,* 349 F.3d 286, 290–91 (6th Cir.2003). The Michigan Supreme Court recited the language of *Ross* that articulated the critical distinction the Supreme Court made between first and second appeals, justifying denial of counsel to indigents in the later, namely that the indigent defendant at that stage "will have, at the very least, a transcript or other record of trial proceedings, a brief on his behalf in the Court of Appeals setting forth his claims of error, and in many cases an opinion by the Court of Appeals disposing of his case." *Bulger,* 462 Mich. at 514, 614 N.W.2d at 111 (quoting *Ross,* 417 U.S. at 615, 94 S.Ct. 2437). The Michigan Supreme Court chose not to follow this direction, however, because it was unable to ascertain the "doctrinal basis" of the decisions in *Douglas* and *Ross,* and it determined that the "shorter, simpler, and more routine" nature of plea-based convictions was somehow a functional substitute for the first appeal identified in *Ross* in which issues were developed by a trained advocate and decided in a written court opinion. *Id.* at 526, 614 N.W.2d at 111–12. It further held that any ineffectiveness in trial counsel "likely will be apparent on the record." *Id.* at 518, 614 N.W.2d at 113.

This Court cannot agree that these conclusions constitute a rational distinction between first appeals from trial convictions by right and first appeals from plea-based convictions that are discretionary that preserves a meaningful right of access to Michigan's intermediate appellate court. As the Sixth Circuit noted, the process by which guilty pleas are taken is far from perfect; without counsel's assistance in scouring the record and marshaling the arguments of the defendant, issues relating to knowledge and voluntariness can still slip beneath the radar of the Michigan courts. *See Tesmer,* 333 F.3d at 700; *see*

e.g., *Lyons v. Jackson,* 299 F.3d 588, 600 (6th Cir.2002) (granting habeas relief to a petitioner who was not aware that the "benefits" of his plea were illusory); *Magana v. Hofbauer,* 263 F.3d 542, 549 (6th Cir.2001) (granting habeas relief to a petitioner who was incorrectly advised as to the sentences he would receive by pleading guilty versus going to trial).

In addition, Michigan has a unified appeal system for criminal cases in which all claims must be raised in the first appeal, including claims of ineffective assistance of counsel that might not at first be apparent from the lower court record. To address this circumstance, the Michigan Supreme Court in *People v. Ginther,* 390 Mich. 436, 212 N.W.2d 922 (1973), outlined a procedure for developing a record when a defendant desires to assert claims that are outside the record. The court stated:

> A defendant who wishes to advance claims that depend on matters not of record can properly be required to seek at the trial court level an evidentiary hearing for the purpose of establishing his claims with evidence as a precondition to invoking the processes of the appellate courts except in the rare case where the record manifestly shows that the judge would refuse a hearing; in such a case the defendant should seek on appeal, not a reversal of his conviction, but an order directing the trial court to conduct the needed hearing.

*Id.* at 443–44, 212 N.W.2d at 925. When no such motion was made in the trial court, the supreme court stated that a criminal appellant should seek a remand:

> Ginther's appellate counsel moved in the Court of Appeals on August 3, 1971 for an order remanding the case to the trial court so that Ginther could file "a motion for a new trial." The motion showed the need for remand and should have been granted.

The motion alleged that the grounds on which a "new trial" was sought were such that they "should be presented to the trial court prior to determination by this court"; the motion enumerated the grounds: denial of effective assistance of counsel, refusal to substitute another lawyer after Ginther had asserted that the appointed lawyer "was not pursuing his case with the vigor demanded by the law," his plea of guilty was coerced, the judge's failure to disqualify himself, failure to read the Miranda warning.

*Id.* at 444–45, 212 N.W.2d at 926. The procedure has since been codified in the Michigan Court Rules as follows:

> Within the time provided for filing the appellant's brief, the appellant may move to remand to the trial court. The motion must identify an issue sought to be reviewed on appeal and show:
>
> (i) that the issue should be initially decided by the trial court; or
>
> (ii) that development of a factual record is required for appellate consideration of the issue. A motion under this subrule must be supported by affidavit or offer of proof regarding the facts to be established at a hearing.

Mich Ct. R. 7.211(C)(1)(a). In light of the elaborate procedure prescribed for exploring claims of ineffective assistance of counsel mandated by the state supreme court's rules, it is quite inconsistent to suggest that such claims will be "apparent on the record." In reality, no trial court reasonably can be expected to grasp, much less make inquiry into, all of the meritorious defenses a defendant might be able to raise at trial, and it would be remarkable indeed to expect trial counsel to be the own best judge of her effectiveness. *See Lyons,* 299 F.3d at 600 (granting habeas relief to Michigan defendant whose counsel was ineffective); *Magana,* 263 F.3d at 549 (same). In situations where trial counsel

may have overlooked a dispositive claim, such as a suppression motion, indigent Michigan defendants will lack any assistance from counsel in recognizing and presenting such a claim. Wealthy defendants will have the benefit of retained counsel in their presentation of a claim under *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986), but indigent defendants will have to hope that they open the United States Reports to the correct page.

Furthermore, although it is true that most claims that otherwise might be raised on appeal are waived by the successful tender of a guilty plea, certain claims are not waived, such as double jeopardy and other claims that challenge the jurisdiction of the trial court to adjudicate the defendant's guilt. *Tesmer*, 333 F.3d at 700. Another such claim would be a defendant's mental competency to enter a plea of guilt, *see Bulger*, 462 Mich. at 561, 614 N.W.2d at 133 (Cavanaugh, J., dissenting) (citing *People v. Parney*, 74 Mich.App. 173, 176, 253 N.W.2d 698 (1977)). The notion that a mentally handicapped or otherwise incompetent individual would be capable of presenting *pro se* an argument for relief to the court of appeals is simply not tenable. Of greatest concern, however, is the reality that any argument as to the effectiveness of trial counsel, as earlier observed, essentially would be extinguished upon the trial court's acceptance of the defendant's guilty plea. This Court simply cannot agree with the Michigan Supreme Court's finding that all such meritorious claims should be apparent to the trial court at the time the plea is taken. *Bulger*, 462 Mich. at 518, 614 N.W.2d at 113.

The distinctions made by the Michigan Supreme Court between first appeals by right and first appeals by leave are superficial and fail to embrace the bedrock principle articulated by the Supreme Court that the Constitution forbids conditioning meaningful access to the courts on the basis of wealth. The distinction between the rule in *Douglas* and the rule in *Ross* turns not so much on the difference between appeal by right and discretionary appeals; rather the critical difference is based on first and second appeals, and that the later may proceed "counseless" when the accused benefitted from the assistance of counsel in the former. The Michigan Supreme Court's reading to *Ross* to permit the denial of counsel to an indigent defendant on appeal solely because the appeal is discretionary in not a reasonable application of Supreme Court precedent.

 It is clear to this Court that wealthy defendants who have retained counsel will be able to petition the Michigan Court of Appeals to review their challenges to guilty-plea-based convictions on allegations of double jeopardy, incompetency, or ineffective assistance of counsel, along with all of the other claims that may have been waived through the ineffectiveness of said counsel, while indigent defendants are denied the benefit of counsel's assistance in this regard. The difference between the claims of two individuals in these opposite circumstances has nothing to do with their merit, and everything to do with the financial resources they bring with them to court. Unlike the wealthy defendant, whose retained counsel can examine the lower court record and easily ferret out claims most likely to be considered significant by the Michigan Court of Appeals, the indigent defendant has "only the barren record" on which to justify his request for leave to appeal, making it likely that any "hidden merit" in his case will go undiscovered. *Douglas*, 372 U.S. at 356, 83 S.Ct. 814. Such a distinction is the essence of the difference *Douglas* drew between a "meaningless ritual" and a "meaningful appeal." *Id.* at 357, 83 S.Ct. 814. The Michigan Supreme Court's holding that such a two-tiered system of justice

does not result in "an unconstitutional line [being] drawn between rich and poor," *Douglas*, 372 U.S. at 357, 83 S.Ct. 814, was therefore objectively unreasonable. Although that court recognized the applicable precedents, it applied them in a manner that robbed them of their meaning.

The Court therefore finds the petitioner entitled to habeas relief on his claim, and concludes that the denial of counsel to the petitioner was contrary to the Fourteenth Amendment's Equal Protection Clause.

## IV.

Although not contrary to any clearly established Supreme Court precedent, the decision of the Michigan Supreme Court denying the petitioner counsel to assist with his request for leave to appeal his conviction and sentence resulting from a plea of guilt was nevertheless an objectively unreasonable application of clearly established Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1).

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **CONDITIONALLY GRANTED.**

It is further **ORDERED** that the State of Michigan shall, within fifty-six days, either appoint counsel for the petitioner to prepare an application for leave to appeal and accept said appeal for filing within fifty-six days thereafter, or release the petitioner from its unlawful custody, in which case the petitioner's convictions shall be vacated.