**NOT FOR PUBLICATION**

File Name: 05a0512n.06

Filed: June 15, 2005

**No. 03-2570**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| JOHN CHANDLER EWING, | * |
| | * |
| **Plaintiff-Appellant,** | * |
| | * |
| v. | * ON APPEAL FROM THE UNITED |
| | * STATES DISTRICT COURT FOR |
| NICK LUDWICK, Warden, | * THE EASTERN DISTRICT OF |
| | * MICHIGAN |
| **Defendant-Appellee.** | * |
| | * |
| | * |

**BEFORE: KEITH, CLAY, and FARRIS,**[*] Circuit Judges.

**FARRIS, J.** John Chandler Ewing was convicted in 1985 by a Michigan state jury of criminal sexual conduct in the first degree and was sentenced to life imprisonment. He claims in this habeas appeal that he has unearthed previously undisclosed, exculpatory evidence, and that certain of the government's pretrial identification procedures violated his constitutional rights. The district court denied the petition in a thorough, seventy-page opinion. We agree with the district court and

---

[*] The Honorable Jerome Farris, Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

affirm.

## BACKGROUND

This appeal involves Ewing's May 16, 1985, jury conviction for the rape of Julie Culhane.

At that trial, Culhane testified that on June 20, 1983, while she was jogging, a man jogged up behind her, grabbed her, and dragged her into the woods. The man threw her down on her stomach, put her shirt over her head, removed her clothes, turned her over onto her back, and raped her. He then told her to count to 100 before she moved and threatened to kill her if she screamed. Culhane stated that the rapist wore aviator-style sunglasses with silver rims. She also testified that she concentrated on her assailant's face, trying to remember it so that she could tell the police.

Two days later, Culhane, who was an art student, assisted the police in drawing a composite sketch of the rapist. Culhane testified that she was not satisfied with the police drawing, so she drew her own. Though Ewing disputes this fact, Culhane also testified that she drew a second sketch two days later. These were the only two composite sketches entered into evidence at trial. There were slight differences in the length of the mustache in the sketches; in the second of her sketches, the mustache did not extend below the lip.

On two occasions in the year that followed, the police showed Culhane an array

of photographs. Culhane picked out Ewing's picture as the man who raped her on the second occasion. She testified that she recognized the man, without prompting from the police, because of the distinctive jaw line, nose, hair, and mustache.[1]

After the photo identification, Detective William Eskridge arrested Ewing for Culhane's rape, as well as for the rape of two other women who had positively identified his picture. He was convicted of Culhane's rape and sentenced to life imprisonment. Ewing appealed his conviction and sentence on multiple occasions to the Michigan Court of Appeals and the Michigan Supreme Court, all with little success.[2] He then filed this motion for habeas relief, which the district court denied.

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act sets the federal courts' standard of review in habeas cases; petitions are not to be granted unless the state court adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on

---

[1]After Culhane positively identified Ewing, the police showed an array containing Ewing's photograph to several other rape victims. Some of the victims identified Ewing as their rapist.

[2]Ewing did achieve a series of remands on the question of his sentence. No sentencing issues are before us.

3

an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Federal courts are bound by state court adjudications unless those decisions are contrary to or an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).

## ANALYSIS

### 1. The Undisclosed Exculpatory Evidence Claim

A failure to disclose evidence to the defense is actionable "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). A *Brady* violation exists when evidence is (1) suppressed, (2) material to the question of guilt, and (3) favorable to the accused. *Elmore v. Foltz*, 768 F.2d 773, 777 (6th Cir. 1985). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

Ewing's primary piece of allegedly undisclosed, exculpatory evidence involves a composite sketch of Ewing that was shown to Culhane. Ewing claims that Detective Eskridge, after coming to suspect Ewing of the Culhane rape based on his experience and knowledge of other rapes, altered a composite sketch in

4

another rape case so that it more closely resembled Ewing (making the mustache extend lower than the lips, giving the chin a cleft, and making the hair color closer to Ewing's). Ewing alleges that Eskridge withheld the actual Culhane composite and attempted to substitute the altered composite at trial. Ewing concedes, however, that the altered composite was never actually introduced at trial; nevertheless, he argues that the altered composite should have been disclosed to him because he believes that it was used to elicit a positive identification from Culhane. The claim, in brief, is that Eskridge framed Ewing for the Culhane rape by altering one of the police composite sketches so that it more closely resembled Ewing, and then failed to disclose the altered sketch.

Ewing's arguments are unpersuasive for at least three reasons. First, as detailed by the district court, there is absolutely no evidence that Eskridge or anyone else altered the composite sketch shown to Culhane. Second, even if one of the numerous composite sketches had been altered, Ewing establishes no basis for a conclusion that this hypothetically altered composite was ever shown to Culhane. Ewing's contention that he would have benefitted simply by knowing that, at some time, a composite was altered by someone is without merit. Culhane testified that she drew two composite sketches of her assailant, and that it was on the basis of these sketches and the second photograph array that she was able to

5

identify Ewing.[3]  Third, even if there had been an alteration in one of the composites, Ewing has failed to show how obtaining such evidence would have made a material difference.  The alleged alterations consist of a slightly longer mustache, a chin cleft, and slightly different hair color.  These differences do not undermine the reliability of the identification or the jury verdict, and do not justify granting the writ.  *See Kyles v. Whitney*, 514 U.S. 419, 434 (1995) (citing *Bagley*, 473 U.S. at 678) ("A 'reasonable probability' of a different result is . . . shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'").

It is not clear to what extent Ewing relies on other allegedly undisclosed evidence.  He mentions obliquely a five-page report written by Detective Eskridge that dealt with the rape of another person, Carrie Rice.  Rice was not permitted to testify at Ewing's trial; whether another suspect had been developed in Rice's case was immaterial to the circumstances of Culhane's rape.[4]  Ewing similarly points to a police report in another rape case, that of Gail-Lynn Johnson,[5] which he claims

---

[3]Ewing points out that in other proceedings, Culhane testified that she drew only one sketch, not two.  This may be true, but it hardly demonstrates, as Ewing suggests, that Culhane was "obviously confused at trial."

[4]We note that Ewing pled nolo contendere to raping Rice.

[5]Ewing pled nolo contendere to raping Johnson.

was not disclosed to him.  The record reflects that Johnson did not testify at Ewing's trial.

Ewing argues that the district judge should have reviewed the withheld evidence "cumulatively" to assess its collective impact.  The record reflects no evidence to which Ewing was entitled but did not receive.

Lastly, Ewing argues that the government "destroyed evidence" some years after his conviction, and that all evidence in his case should have been retained. We reject this argument.  Ewing does not and cannot show "bad faith destruction" on the part of the government.  *See Arizona v. Youngblood*, 488 U.S. 51, 57 (1988).

## 2.  *The Unconstitutional Pretrial Identification Procedures Claim*

Ewing complains of procedures used to identify and arrest him.

First, he claims that his Fourth Amendment rights were violated because he was in custody and not free to leave when Detective Eskridge took his photograph at the police station.  He argues that (1) Eskridge would not let him leave until he had obtained his photograph, and (2) he was not read his *Miranda* rights.[6]

---

[6]It is not clear why Ewing believes that he should have been given *Miranda* warnings.  *Miranda* warnings must be given when a person undergoes custodial interrogation.  *Miranda v. Arizona*, 384 U.S. 436, 444 (1965).  Ewing was not undergoing custodial interrogation.  Furthermore, the failure to give a *Miranda* warning does not require the suppression of physical evidence, such as a photograph.  *See United States v. Patane*, 124 S. Ct. 2620, 2626 (2004) (noting that the Fifth Amendment is not violated as a result of the introduction of

His claim is without merit. A federal habeas court cannot ordinarily review a state court's decisions on a Fourth Amendment claim if the state has provided a full and fair opportunity to litigate that claim. *Stone v. Powell*, 428 U.S. 465, 489-90 (1976). Ewing was given a full and fair opportunity to litigate this claim. He admits as much when he states that the state courts held that he was never in custody.

Second, Ewing claims that the identification procedures used by the police were unduly suggestive. He complains that the alteration of the composite sketch that forms the basis of his claim of withheld, exculpatory evidence also renders the identification process flawed. Nothing in the record indicates that the composite sketch was altered as he suggests. His other claims of undue suggestion are unpersuasive: he contends that "Ewing's eyes were covered on his photo to help Culhane identify it," but it was Culhane who requested that the police officers do this because she had not seen her assailant's eyes. Ewing also argues that his photograph was the only one without writing on the back, but Culhane specifically testified that she did not look at the back of the photographs in the second array.

Nothing in the record supports a claim of impermissibly suggestive conduct. *See Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir. 1986).

---

nontestimonial evidence).

**AFFIRMED**.