NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a1003n.06
Filed: December 21, 2005

Case No. 04-6150

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| DONALD G. BRADLEY, JR., | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |

**BEFORE: BOGGS, Chief Judge; BATCHELDER, Circuit Judge; GADOLA[*], District Judge.**

**PAUL V. GADOLA, District Judge.** Defendant Donald G. Bradley, Jr. was convicted of

bank robbery. He appeals the district court's denial of his motion to suppress evidence and his

sentence. For the following reasons, we will AFFIRM the decision of the district court.

**I.**

On December 31, 2003, at approximately 10:41 a.m., a man entered the Bank of Tennessee

in Jonesborough, Tennessee wearing a cap, khaki pants, a sweater, and Timberland brand boots.

The man had hosiery pulled over his head and hands. The man climbed over the counter, stated that

he did not have a gun, and demanded that a teller give him money without sounding the alarm. He

---

[*]The Honorable Paul V. Gadola, United States District Judge for the Eastern District of Michigan, sitting by designation.

obtained approximately $6,800 in U.S. currency, including some recorded bills. The man left in a green Mazda pickup truck with dents in the tailgate.

1. After hearing a report on the local news, a U.S. Probation Officer called the investigator on the case, Michael Lewis. The Probation Officer, Tressa Treadway, advised the investigator that Defendant Donald Bradley, Jr. was possibly the robber. He was being supervised for a 1984 bank robbery, had not reported to his probation officer as scheduled on December 31, 2003, and drove a green Mazda truck. Bradley had told another probation officer that his failure to report was due to his truck being broken and had provided the name of a garage where the truck was being repaired. Lewis telephoned the garage and was informed that the truck was present for problems with the transmission. Lewis then pursued other suspects.

On January 6, 2004, Lewis, aided by Special Agent Scotty Ferguson of the Tennessee Bureau of Investigation, went to the garage to confirm the previous information. They learned from the garage that although the truck had been at the garage for a few days prior to the robbery, Bradley had picked up the truck prior to the robbery and had returned the truck around noon on the day of the robbery. Based on this information, Lewis and Ferguson went to Bradley's residence. Bradley was living with Betty Brown at her residence. They observed a green Mazda truck with a dented tailgate parked outside the residence. They left the residence, returning later when the truck was gone and Brown's vehicle was present.

Upon returning, the investigators knocked on the door and Brown answered. The investigators stated their purpose and she invited them into the house. Brown was concerned about the allegations and gave the investigators permission to search the house. A few moments later, Bradley arrived.

2

Brown met Bradley at the door, stating that the investigators wanted to speak with him. Ferguson testified at the evidentiary hearing that he immediately noticed that Bradley was wearing Timberland brand boots. The investigators sat with Bradley at the kitchen table. Lewis asked Bradley if he had any identification. Bradley pulled out his wallet and held it out for Lewis. Lewis asked to look inside the wallet. Both investigators testified that Bradley handed over the wallet, stating something to the effect of "I ain't got no money in it," as he handed Lewis the wallet. The wallet contained two twenty-dollar bills, one ten-dollar bill, and two one-dollar bills. Lewis discovered that the serial number on one twenty-dollar bill matched a recorded serial number from the robbery. Lewis told this to Ferguson, who then told Bradley that he wished to take a statement from him and advised him of his *Miranda* rights. Bradley signed a waiver.

After advising Ferguson of his discovery, Lewis had left the kitchen to search the residence with Brown. He discovered khaki pants and a sweater, consistent with the description from the robbery. He seized those items. Lewis returned to the kitchen, where Ferguson and Bradley were speaking. The investigators asked Bradley if he had anything in his pockets. Bradley pulled his hands out of his pockets and a small cellophane-wrapped package fell to the floor. Bradley put the package in his mouth. A struggle ensued, as Lewis and newly arrived local police officers unsuccessfully attempted to prevent him from swallowing the object. Bradley was arrested for resisting arrest. The following day, Bradley told Lewis before an interview began that he never consented to a search of his wallet.

The Government filed a criminal complaint against Bradley on January 7, 2004, charging Bradley with bank robbery in violation of 18 U.S.C. § 2113(a). The Grand Jury returned an indictment for the same offense on January 21, 2004. Bradley filed a motion to suppress the

evidence. A magistrate judge held an evidentiary hearing, at which only Lewis and Ferguson testified. The magistrate judge issued a report and recommendation concluding that the motion should be denied. Bradley objected to the report and recommendation, but the district court overruled the objections and denied the motion to suppress.

Bradley entered into a Rule 11(a)(2) plea agreement, reserving his right to appeal the denial of the motion to suppress. Bradley was sentenced on August 30, 2004 to 180 months of imprisonment, followed by three years of supervised release. Bradley filed a timely notice of appeal.

## II.

Bradley appeals the district court's denial of his motion to suppress, arguing that the search of his wallet and the examination of the currency in the wallet violated his Fourth and Fifth Amendment rights. "Factual findings made in consideration of a motion to suppress are reviewed for clear error, while the conclusions of law are reviewed de novo." *United States v. Ursery*, 109 F.3d 1129, 1132 (6th Cir. 1997). "The evidence is reviewed 'in the light most likely to support the district court's decision.'" *Id.* (quoting *United States v. Braggs*, 23 F.3d 1047, 1049 (6th Cir. 1994). Specifically, Bradley argues that 1) the officers exceeded the scope of his consent; 2) his consent was not knowing and voluntary; 3) his Fifth Amendment rights were violated because he surrendered his wallet before being given any *Miranda* rights notification; 4) the officers should have obtained a search warrant; and 5) the district court placed the wrong burden of proof on the Government. Bradley also appeals his sentence as invalid in the light of *United States v. Booker*, 543 U.S. __, 125 S. Ct. 738 (2005). We address each argument in turn.

Bradley first argues that the scope of his consent was limited to an examination of his identification and did not include a search and seizure of the money in his wallet. The scope could not have included such a search and seizure, argues Bradley, because he was led to believe that the officers wanted his wallet in order to examine his identification, not his money. Bradley maintains that his statement that his wallet did not contain any money bears out this understanding.

Bradley's argument incorrectly relies on a subjective standard for measuring the scope of his consent—what he meant when he consented to the search. The correct standard "is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). A typical reasonable person would have understood, from the exchange between the officers and Bradley, that Bradley consented to a search of his entire wallet, including the money contain therein. In response to a request for identification, Bradley held up his entire wallet for Lewis. Lewis asked Bradley if he could look inside it and Bradley handed over his entire wallet, not just his identification. Lewis's request to look inside the wallet was broad and not simply a request to retrieve identification.

Bradley's statement that his wallet contained no money, rather than serving to limit his consent, actually supports the finding that Bradley consented to a search of his entire wallet. The investigators informed Bradley that they were investigating a bank robbery. Having already been convicted of bank robbery on two occasions, Bradley would have known that money is evidence of such a crime. Bradley's statement suggests that he suspected that the officers were looking for evidence of the robbery and that he consented to a search of his wallet for evidence in the mistaken belief that it contained none.

Bradley next argues that his consent was not knowing and voluntary because he was not specifically told to what he was consenting and that he had a right to refuse consent. According to Bradley, his consent was not given knowingly because he was not specifically told that the investigators wanted to examine the contents of his wallet for evidence. Instead, he claims he was tricked into consenting to the search of his wallet and that Lewis's request for identification was a ruse. Bradley claims that his consent was not voluntary because he was in custody at the time Lewis asked to search his wallet.

"The question of whether a consent to search is voluntary and knowing is a question of fact to be determined from the totality of all the circumstances." *United States v. Abdullah*, 162 F.3d 897, 902 (6th Cir. 1998). To evaluate the totality of the circumstances, the Court should consider several factors such as "the age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; and whether the individual understands his or her constitutional rights." *United States v. Ivy*, 165 F.3d 397, 402 (6th Cir. 1998). In addition, the Court "should consider the details of the detention, including the length and nature of detention; the use of coercive or punishing conduct by the police, and indications of 'more subtle forms of coercion that might flaw [an individual's] judgment.'" *Id*. (quoting *United States v. Watson*, 423 U.S. 411, 424 (1976)) (citation omitted). No single factor is dispositive of the analysis. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973).

The factors show that Bradley's consent was voluntary and knowing. Bradley was 45 years old at the time of the events in question. He had received his G.E.D. and some college education. Bradley's criminal history indicates that he is well experienced with the criminal law. He has been convicted of numerous misdemeanors and has twice before been convicted of bank robbery. In fact,

at the time he consented to the search of his wallet, Bradley was on parole for a sentence he received from a 1984 federal bank robbery conviction. Regarding the detention, the magistrate judge in this case found:

> There was no evidence presented at this hearing from which this Court could reasonably conclude that defendant felt intimidated or coerced in any manner. The officers were armed, to be sure, but no weapons at any time were drawn. Whether one or both of these officers would have allowed defendant to leave during the conversation is an irrelevant and speculative inquiry, inasmuch as there is absolutely no evidence that defendant did not feel free to leave at any time. Indeed, all the evidence presented at this hearing indicated that defendant was rather comfortable and voluntarily cooperative with the agents, at least until the time he ingested the item he inadvertently dropped to the floor. And lest the fact be overlooked, it is again noted that defendant was somewhat experienced with the criminal justice system . . . .

(J.A. 21). Bradley did not present evidence to the contrary at the evidentiary hearing. The district court adopted these facts. The district court did not err by doing so. The record indicates that Bradley consented voluntarily and knowingly. Voluntary and knowing consent does not require that Bradley be advised that he is entitled to refuse consent. *United States v. Drayton*, 536 U.S. 194, 206 (2002).

Bradley's third argument is that he was in custody at the time of the search, but was not yet given his *Miranda* warnings, and therefore the search violated the Fifth Amendment. However, just as Bradley was not in custody so as to make his consent involuntary, he was not in custody for the purposes of the Fifth Amendment. A reasonable person in Bradley's circumstances would have felt that he was free to end the interview and go about his business. *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). In any event, the "fruit of the poisonous tree" doctrine does not apply to physical evidence seized as a result of a *Miranda* violation. *See United States v. Patane*, 542 U.S. 630, 639 (2004); *see also Ewing v. Ludwick*, 134 Fed. Appx. 907, 911 (6th Cir. 2005) (unpublished).

7

Bradley's fourth argument is that the investigators should have obtained a search warrant before searching his person or his residence. This argument is without merit, though, as the Supreme Court has expressly held that "a search pursuant to consent . . ., properly conducted, is a constitutionally permissible and wholly legitimate aspect of effective police activity." *Schneckloth*, 412 U.S. at 228.

Bradley's fifth argument regarding the motion to suppress is that the district court used the wrong burden of proof. He claims, based on the Sixth Circuit case of *United States v. Salvo*, 133 F.3d 943, 953 (6th Cir. 1998), that consent must be shown by "clear and positive testimony." This statement, however, does not alter the burden of proof, but merely illustrates what kind of evidence must be used. Supreme Court precedent still provides that "the controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence." *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974); *see also Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

Finally, Bradley objects to his sentence as unconstitutional because it did not comply with the sentencing procedures enunciated in *United States v. Booker*. Regardless, Bradley waived his right to appeal his sentence in the plea agreement and such waivers are enforceable. *See United States v. Bradley*, 400 F.3d 459 (6th Cir. 2005); *United States v. Hunyady*, 409 F.3d 297, 304 (6th Cir. 2005) ("[B]ecause [the defendant] has waived his right to file an appeal from his sentence, we need not consider any claims that he might otherwise have had under *United States v. Booker*.").

### III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.