**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED DECEMBER 22, 2008

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v                                                          No. 129693

MARK ALLEN MAXSON,

   Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH.

MARKMAN, J.

At issue here is whether the United States Supreme Court's decision in *Halbert v Michigan*, 545 US 605; 125 S Ct 2582; 162 L Ed 2d 552 (2005), should be applied retroactively to cases in which a defendant's conviction has become final. In lieu of granting leave to appeal, we affirm the judgment of the trial court denying defendant's motion for relief from judgment, and we conclude under federal and state law that *Halbert* should not be applied retroactively to cases in which a defendant's conviction has become final.

## I.  FACTS AND PROCEDURAL HISTORY

In 2001, defendant pleaded guilty to two counts of second-degree criminal sexual conduct, and subsequently failed to request appointed counsel or to file a direct appeal.  On June 23, 2005, the United States Supreme Court issued *Halbert*, which held that indigent defendants who plead guilty to criminal offenses are entitled to appointed appellate counsel on direct appeal.  *Id*. at 610.  After *Halbert* was decided, defendant requested appointed counsel in the instant motion for relief from judgment.   However, because defendant's conviction was final before *Halbert* was decided, defendant is only entitled to counsel if the rule announced in *Halbert* is applied retroactively.

## II.  STANDARD OF REVIEW

The retroactivity of a court's ruling presents an issue of law that this Court reviews de novo.  *People v Sexton*, 458 Mich 43, 52; 580 NW2d 404 (1998).

## III.  ANALYSIS

## A.  RETROACTIVITY UNDER FEDERAL LAW

"New legal principles, even when applied retroactively, do not apply to cases already closed."  *Reynoldsville Casket Co v Hyde*, 514 US 749, 758; 115 S Ct 1745; 131 L Ed 2d 820 (1995).  This is because "at some point, 'the rights of the parties should be considered frozen' and a 'conviction . . . final.'"  *Id.*, quoting *United States v Estate of Donnelly*, 397 US 286, 296; 90 S Ct 1033; 25 L Ed 2d 312 (1970) (Harlan, J., concurring).   There are, however, "certain special concerns-- related to collateral review of state criminal convictions-- that affect

2

which cases are closed, for which retroactivity-related purposes, and under what circumstances." *Id.*

In *Teague v Lane*, 489 US 288; 109 S Ct 1060; 103 L Ed 2d 334 (1989), the United States Supreme Court set forth the federal standard for determining whether a rule regarding criminal procedure should be applied retroactively to cases in which a defendant's conviction has become final. *Teague* established the "general rule" that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Id*. at 310. However, *Teague* laid down two exceptions to this general rule: first, a new rule should be applied retroactively if it places "'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe,'" *id*. at 307 (citation omitted); and second, a new rule should be applied retroactively "if it requires the observance of those procedures that . . . are implicit in the concept of ordered liberty." *Id.* (citations and internal quotation marks omitted).

Thus, the first question under *Teague* is whether the rule in *Halbert* constitutes a new rule. "'[A] case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government.'" *Penry v Lynaugh*, 492 US 302, 314; 109 S Ct 2934; 106 L Ed 2d 256 (1989) (citation omitted). Deciding whether a rule is "new" requires a court to determine "whether 'a state court considering [the defendant's] claim at the time his conviction became final would have felt *compelled* by existing precedent to

3

conclude that the rule [he] seeks was required by the Constitution.'" *O'Dell v Netherland*, 521 US 151, 156; 117 S Ct 1969; 138 L Ed 2d 351 (1997) (emphasis added and internal citations omitted). If a reasonable jurist would not have felt compelled by existing precedent, then the rule is new. *Beard v Banks*, 542 US 406, 413; 124 S Ct 2504; 159 L Ed 2d 494 (2004). In other words, the relevant question is not simply whether existing precedent might have *supported* the rule, but whether the rule "was *dictated* by then-existing precedent." *Id*. at 413 (emphasis in original).

We conclude that the rule in *Halbert* constitutes a new rule. Although *Halbert* found support in the earlier United States Supreme Court decision of *Douglas v California*, 372 US 353; 83 S Ct 814; 9 L Ed 2d 811 (1963), that case did not clearly require the outcome in *Halbert*. *Douglas* held that when a state grants a first appeal as of right, the state is required to appoint appellate counsel for indigent defendants. *Id*. at 357. Because Michigan does not grant an appeal as of right to a defendant who pleads guilty,[1] and because the United States Supreme Court had previously decided that appointment of appellate counsel is unnecessary when an appellate court, such as a state's highest court, has the discretion to choose whether to reach the merits of a defendant's appeal, *Ross v Moffitt*, 417 US

---

[1] Defendants who seek to appeal their guilty pleas must file an application for leave to appeal with the Court of Appeals. MCR 7.203(A)(1)(b).

4

600; 94 S Ct 2437; 41 L Ed 2d 341 (1974), a reasonable jurist could well conclude that *Douglas* did not compel the result in *Halbert*.

Because "it is more difficult . . . to determine whether [the Supreme Court] announce[d] a new rule when a decision extends the reasoning of [its] prior cases," *Saffle v Parks*, 494 US 484, 488; 110 S Ct 1257; 108 L Ed 2d 415 (1990), the "new rule" principle is designed to "validate[] reasonable, good-faith interpretations of existing precedents made by state courts even though they are shown to be contrary to later decisions." *Butler v McKellar*, 494 US 407, 414; 110 S Ct 1212; 108 L Ed 2d 347 (1990). In *Halbert,* the dissenting Supreme Court justices argued against extending *Douglas*, further supporting the conclusion that *Douglas* did not compel the result in *Halbert* and that this Court's previous interpretation was reasonable.

Because the rule in *Halbert* was new, the remaining question under *Teague* is whether either of the two *Teague* exceptions applies. The first exception is clearly inapplicable, as the rule in *Halbert* does not concern a rule that "'forbid[s] criminal punishment of certain primary conduct . . . [or] prohibit[s] a certain category of punishment for a class of defendants because of their status or offense.'" *O'Dell*, *supra* at 157 (citation omitted). Thus, the only issue is whether *Halbert* constituted a "watershed" decision that involved "procedures . . . implicit in the concept of ordered liberty." *Graham v Collins*, 506 US 461, 478; 113 S Ct 892; 122 L Ed 2d 260 (1993) (citations and internal quotation marks omitted).

5

The United States Supreme Court has repeatedly emphasized the limited scope of the second *Teague* exception. The Court has observed that because any such rule "would be so central to an accurate determination of innocence or guilt [that it is] unlikely that many such components of basic due process have yet to emerge, it should come as no surprise that we have yet to find a new rule that falls under the second *Teague* exception." *Beard, supra* at 417 (internal citations and quotation marks omitted). The Supreme Court has referred to the right to counsel set forth in *Gideon v Wainwright*, 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963), as an example of a rule that would fall into the second *Teague* exception. It is significant that in referring to this example, the Supreme Court observed, "In providing guidance as to what might fall within this exception, we have repeatedly referred to the rule of *Gideon* (right to counsel), and *only to this rule*." *Beard, supra* at 417 (emphasis added and internal citation omitted).

Notably, the Sixth Amendment right to counsel articulated in *Gideon* and its progeny has a constitutional basis distinct from that underlying the *Douglas* line of cases addressing the right to counsel *on appeal* that are rooted in the Equal Protection and Due Process clauses of the Fourteenth Amendment. Further, considering that *Halbert* is unlikely to apply to any situation other than Michigan's unique legislative system of appeals from plea-based convictions, we agree with the Sixth Circuit that "[i]t does not represent a shift in 'bedrock procedural elements' and it cannot be said to be 'on par' with *Gideon*." *Simmons v Kapture*, 474 F3d 869, 887 (CA 6, 2007) (Reeves, J., dissenting), adopted by *Simmons v*

6

*Kapture*, 516 F3d 450, 451 (CA 6, 2008) (holding that *Halbert* is not retroactive under *Teague*).

Additionally, a state is not required to provide any appellate proceedings *at all* for defendants who plead guilty. *Halbert*, *supra* at 610. In *Goeke v Branch*, 514 US 115; 115 S Ct 1275; 131 L Ed 2d 152 (1995), the Supreme Court held that "[b]ecause due process does not require a State to provide appellate process at all, a former fugitive's right to appeal cannot be said to be so central to an accurate determination of innocence or guilt as to fall within this exception . . . ." *Id.* at 120 (citations and internal quotations omitted).[2] Considering these holdings, the provision of appointed counsel for such a proceeding can hardly be said to be "implicit in the concept of ordered liberty." Accordingly, in our judgment, *Halbert* cannot be construed as a "watershed" decision, neither of the *Teague* exceptions applies, and *Halbert* thus is not retroactive under federal retroactivity jurisprudence.

B. RETROACTIVITY UNDER STATE LAW

The conclusion that *Halbert* is not retroactive under federal law does not end our analysis, however. A state may accord broader effect to a new rule of

---

[2] "[A] State may not 'bolt the door to equal justice' to indigent defendants" once it has provided an avenue of appeal. *Halbert*, *supra* at 610, quoting *Griffin v Illinois*, 351 US 12, 24; 76 S Ct 585; 100 L Ed 891 (1956). This holding only emphasizes our position that *Halbert* is not a "watershed" decision like *Gideon* because *Halbert* is rooted in the Equal Protection and Due Process clauses of the Fourteenth Amendment, rather than in the Sixth Amendment right to counsel.

criminal procedure than federal retroactivity jurisprudence accords. *Danforth v Minnesota*, ___ US ___; 128 S Ct 1029, 1045; 169 L Ed 2d 859 (2008).[3] Accordingly, we turn to the question of whether *Halbert* should be deemed retroactive under state law. Michigan law has regularly declined to apply new rules of criminal procedure to cases in which a defendant's conviction has become final. See *Sexton*, *supra* (requirement that the police inform a suspect when retained counsel is available for consultation); *People v Stevenson*, 416 Mich 383; 331 NW2d 143 (1982) (abrogation of common-law "year and a day" rule); *People v Young*, 410 Mich 363; 301 NW2d 803 (1981) (preconviction filing of habitual offender notice); *People v Smith*, 405 Mich 418, 433; 275 NW2d 466 (1979) (repeal of criminal sexual psychopath statute barring criminal action against those adjudicated criminal sexual psychopaths); *People v Markham*, 397 Mich 530; 245 NW2d 41 (1976) (double jeopardy "same transaction" test); *People v Rich*, 397 Mich 399; 245 NW2d 24 (1976) (erroneous "capacity standard" jury instruction); *People v Butler*, 387 Mich 1; 195 NW2d 268 (1972) (waiver of a defendant's

---

[3] To conclude that *Teague* was intended to apply strictly to federal habeas review, and not to state court proceedings, *Danforth* argued that: (1) *Teague* was silent regarding a state's ability to give broader effect to federal constitutional decisions, *Danforth*, *supra* at 1039; (2) *Teague* was based on the federal habeas statute, 28 USC 2241 *et seq.*, a "statutory authority that extends only to federal courts," *Danforth*, *supra* at 1040; and (3) *Teague* relied on considerations of comity and federalism, which "are [concerns] unique to *federal* habeas review of state convictions." *Id*. at 1041 (emphasis in original). Accordingly, the analysis in *Teague* binds only federal courts on habeas review, and a state court may use a different test to give broader effect to a new rule of criminal procedure established by the United States Supreme Court.

constitutional rights in taking a guilty plea); *Jensen v Menominee Circuit Judge*, 382 Mich 535; 170 NW2d 836 (1969) (constitutional right to appeal in criminal cases); *People v Woods*, 382 Mich 128; 169 NW2d 473 (1969) (custodial interrogation procedures); *People v Fordyce*, 378 Mich 208; 144 NW2d 340 (1966) (custodial interrogation procedures). In *Sexton*, we considered the following three factors to determine whether a new rule of criminal procedure should be applied retroactively:

> (1) the purpose of the new rules; (2) the general reliance on the old rule[;] and (3) the effect of retroactive application of the new rule on the administration of justice. [*Sexton*, *supra* at 60-61, citing *People v Hampton*, 384 Mich 669, 674; 187 NW2d 404 (1971).]

Under the "purpose" prong, a law may be applied retroactively when it "'concerns the ascertainment of guilt or innocence;'" however, "'a new rule of procedure . . . which does not affect the integrity of the fact-finding process should be given prospective effect.'" *Id*. at 63, quoting *Young*, *supra at* 367. By pleading guilty, defendants are not contesting their guilt, but admitting it freely. Thus, the appointment of counsel on appeal does not concern the ascertainment of guilt or innocence. See *Goeke*, *supra* at 120. Rather, an appeal from a guilty plea concerns only the procedures of the plea process; the defendant has already admitted substantive guilt while represented by counsel. It is hard to imagine a more dispositive process by which guilt can be accurately determined, and in which the appellate process becomes less central to an accurate determination of guilt, than that in which a full admission to criminal conduct has come from the

mouth of the defendant himself under oath,[4] and in an environment in which the defendant has been accorded every protection against a coerced or mistaken confession. Consequently, the first *Sexton* prong counsels against retroactivity.

The second *Sexton* prong, which concerns the "general reliance on the old rule," does not, in our judgment, strongly counsel either way in this case. When considering "reliance," a court examines whether individual persons or entities have been "adversely positioned . . . in reliance" on the old rule. *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 221; 731 NW2d 41 (2007). The dissent implies that defendants who pleaded guilty between 1994 and 2005, as a class, were "penalized by the general reliance" on the old rule.[5] *Post* at 10-11. We disagree. To be considered to have detrimentally relied on the old rule, a defendant must have relied on the rule in not pursuing an appeal and have suffered harm as a result of that reliance. We recognize that ascertaining the precise number of defendants who meet this standard is impossible, but clearly *all* defendants who pleaded guilty between 1994 and 2005 do not meet this standard. Indeed, appeals of guilty pleas before the old rule indicate that it is likely that very few do.

---

[4] Since March 1, 1995, this Court has required all defendants who plead guilty to be placed under oath before doing so. MCR 6.302(A).

[5] 1994 PA 374, which implemented Proposal B, became effective December 27, 1994.

10

First, only a very small percentage of defendants who pleaded guilty *before the old rule* became effective actually appealed their pleas. Before the old rule was implemented in 1994, an estimated 89% to 94% of defendants who pleaded guilty did not appeal their pleas.[6] During this period, indigent defendants were appointed appellate counsel if they chose to pursue an appeal. Yet, fewer than one in ten of all defendants who pleaded guilty actually decided to appeal their pleas. The large number of defendants who pleaded guilty but did not seek appeal can be explained by a variety of factors, most important of which are the lack of an appealable issue after the plea and the risk inherent in appealing a guilty plea.[7] Therefore, it can be assumed that most defendants who pleaded guilty between 1994 and 2005 and did not appeal, rather than not appealing because of reliance on

[6] The State Appellate Defender's Office estimated, on the basis of the cases it handled, that less than six percent of guilty pleas were appealed. House Legislative Analysis Section, Second Analysis, 1994 PA 374, 375 (January 5, 1995), p 2. The House Legislative Analysis Section's November 2, 1993, analysis stated that "[e]stimates put the proportion of people who appeal after pleading guilty at 11 percent or substantially less." House Legislative Analysis Section, First Analysis, House Bill 4070, 4071 (November 2, 1993) ("HB 4070-4071 Analysis"), p 3.

[7] Under MCR 6.312, if an appellate court vacates a defendant's guilty plea, "the case may proceed to trial on any charges that had been brought or that could have been brought against the defendant if the plea had not been entered," including charges more severe then the charge or charges to which the defendant pleaded guilty or charges that the prosecutor agreed to drop in exchange for the plea agreement. The risk of proceeding to trial on more serious or additional charges often persuades defendants not to pursue a plea appeal. Robertson, *Felony Plea Appeals in Michigan – 1992*, (Lansing: Michigan Appellate Assigned Counsel System, 1992), p 2. See also *People v Sutton*, 158 Mich App 755; 405 NW2d 209 (1987).

11

the old rule, did not appeal because of factors unrelated to, and existing before, the old rule.

Second, a defendant who relied on the old rule in not filing an appeal must also have *suffered actual harm* from that reliance in order to have "detrimentally relied" on the old rule. That is, the old rule would have had to preclude defendant from filing an appeal that would have resulted in some form of *relief*. Out of that small number of defendants who pleaded guilty before the old rule and subsequently appealed the plea, only a very limited number received relief on appeal. In 1994, before the old rule was adopted, the Court of Appeals estimated that only three to four percent of guilty plea cases that came before it resulted in some form of relief.[8] The State Appellate Defender Office (SADO), however, estimates that approximately 27% of pleading *indigent* defendants whom it represented received some measure of relief.[9]

Accordingly, the number of pleading defendants who could be said to have detrimentally relied on the old rule would range somewhere between 0.18% (6% x

---

[8] House Legislative Analysis Section, First Analysis, Ballot Proposal B, 1994 General Election, (October 14, 1994), p 4.

[9] HB 4070-4071 Analysis, *supra* at 2; Senate Fiscal Agency, First Analysis, S.J.R. D (Feb 18, 1993), p 2. According to SADO, 42% of the guilty pleas it appealed were entirely dismissed without being heard. Cases "not heard" were typically handled by a "short, simple affirmation of the trial court's decision." *Id*. For the remaining 58% that were not dismissed without a hearing, 47% of *those* appeals received relief. Thus, using the SADO figures, of every six SADO-represented, guilty-pleading defendants who appealed, approximately 1.6, or 27%, secured some measure of relief ((42% x 0%) + (58% x 47%)).

12

3%) and 2.97% (11% x 27%), combining the lowest and highest Court of Appeals/House Legislative Analysis and SADO figures. Thus, there is no reason why it should not be assumed that, at a minimum, 97% to 99% of the defendants who pleaded guilty under the old rule would *not* have received relief under the new rule.[10] While it cannot be disputed that *some* number of defendants would receive relief if *Halbert* were made retroactive,[11] this would be true of extending *any* new rule retroactively, yet this is not generally done. Instead, we must consider, as best as possible, the extent of the detrimental reliance on the old rule, and then balance this against the other *Sexton* factors, as well as against the fact that each defendant who pleaded guilty has received all the rights under the law to which he or she was entitled at the time. Here, we conclude that the extent of the detrimental reliance is remarkably minimal and, as explained above and below, does not outweigh the other *Sexton* factors that clearly counsel against retroactive application.

---

[10] Moreover, if anything, these figures overstate the number of defendants who adversely relied on the old rule. A defendant, for example, who has received relief in the form of resentencing, or the vacating of a plea, has not necessarily been adversely affected if he or she ultimately receives the same sentence after resentencing or is reconvicted after trial.

[11] Appellate "relief," of course, far more often than not consists of such things as requiring judicial rearticulation of a sentence, affording additional rights of allocution, correcting a presentence report, adjusting restitution amounts, clarifying the application of guidelines, and vacating consecutive sentences, as opposed to reversing a conviction or reducing a sentence.

13

Finally, affording appointed counsel to defendants whose appeals became final before *Halbert* would have a markedly adverse effect on the administration of justice, the third *Sexton* prong. The state's strong interest in finality of the criminal justice process would be undermined as presumably significant numbers of the incarcerated population would be entitled to avail themselves of appointed counsel and new appeals, despite having knowingly and intelligently pleaded guilty to criminal conduct while represented by counsel.

"[F]inality of state convictions is a *state* interest . . . that States should be free to evaluate, and weigh the importance of, when prisoners held in state custody are seeking a remedy for a violation of federal rights by their lower courts." *Danforth*, *supra* at 1041 (emphasis in original). The principle of finality "is essential to the operation of our criminal justice system." *Teague*, *supra* at 309. The state's interest in finality discourages the advent of new rules from "continually forc[ing] the State[] to marshal resources in order to keep in prison defendants whose trials and appeals conformed to then-existing constitutional standards," *id*. at 310 (emphasis omitted), and also "serves the State's goal of rehabilitating those who commit crimes because '[rehabilitation] demands that the convicted defendant realize that he is justly subject to sanction, that he stands in need of rehabilitation.'" *Kuhlmann v Wilson*, 477 US 436, 453; 106 S Ct 2616; 91 L Ed 2d 364 (1986), quoting *Engle v Isaac*, 456 US 107, 128 n 32; 102 S Ct 1558; 71 L Ed 2d 783 (1982) (citation and quotation marks omitted). Accordingly,

applying *Halbert* retroactively to cases in which a conviction has become final would have a markedly adverse effect on the administration of justice.

Thus, although retroactive application of *Halbert* would potentially provide a small number of defendants with some form of relief, this does not outweigh the certainty that by applying *Halbert* retroactively, many guilty-pleading defendants whose convictions have become final would inundate the appellate process with new appeals. In light of the limited judicial resources of the state, it is our judgment that those resources would be better preserved for defendants currently charged-- some of whom may be innocent or otherwise entitled to relief-- than for defendants who have knowingly pleaded guilty and presumably accepted the consequences of their decisions. Thus, the third prong weighs far more heavily against retroactive application than the second prong weighs for retroactive application. Considered together, all of the *Sexton* factors, therefore, strongly counsel against applying *Halbert* retroactively under state law to cases in which a defendant's conviction has become final.

## IV. FURTHER RESPONSE TO THE DISSENT

(1) The dissent asserts that we are "swerving and dodging" decisions of the United States Supreme Court by "refusing" to make *Halbert* retroactive in order to "deny indigent defendants access to justice." *Post* at 1. The premise of this overheated assertion is that the United States Supreme Court has already rejected our reasoning, but its repetition by the dissent does not make this so. We have set forth what we think the law is, and we have followed *Teague* and other relevant

15

decisions to their logical and reasonable conclusions. Whatever the dissent's personal conceptions of what should be required by the Constitution, we have applied what this Court and the United States Supreme Court have said the Constitution requires.

(2) The dissent describes us as "arbitrarily" cutting off constitutional relief to defendants whose plea-based convictions became final between 1994 and 2005. We fail to see what is "arbitrary" about applying existing precedent to determine whether *Halbert* is retroactive and, having concluded that it is not, employing the date of the *Halbert* decision to determine who precisely is entitled to the benefits of that decision. Using the date of a decision that has granted a right as the starting date for entitlement to that right has long been the standard procedure of this Court. See *Woods*, *supra* at 138-139.

(3) The dissent believes that because *Halbert* overruled this Court's determination in *People v Bulger*, 462 Mich 495; 614 NW2d 103 (2000), that MCL 770.3a was constitutional, his position in the instant case should prevail. This overlooks that the issues in *Bulger* and this case are simply different. Unlike *Bulger*, this case does not concern whether the right to first-tier appellate counsel exists; *Halbert* has decided this. Rather, the present issue concerns the extent to which *Halbert* is retroactive. Indeed, in *Bulger*, we expressly declined to address the constitutionality of MCL 770.3a because it did not apply to the defendant in that case. *Id.* at 506 ("Because this new statute does not apply to defendant, the

16

question of its constitutionality is not before us.").[12]  While the analysis employed by the Supreme Court in recognizing a constitutional right may well be relevant in some instances in assessing the right's retroactivity, it will rarely be conclusive. Indeed, *Teague* and *Danforth* themselves confirm that assessments of retroactivity are independent of the recognition of the right itself and that the two determinations involve different questions and require the evaluation of different interests.

(4) The dissent concludes that precedent "compelled" the result in *Halbert* by declaring the holding in *Ross* to be so clear that it "does not support a claim that a reasonable jurist could conclude that the rule of *Halbert* was not compelled." *Post* at 5.  We think the simple fact that *Halbert* was a 6 to 3 decision, and reversed a majority of this Court, makes sufficiently clear that reasonable jurists could conclude that *Halbert* was not "compelled."  Further, even the trial court that *granted* conditional habeas relief in *Bulger* recognized that this Court's position was "not contrary to any *clearly established* Supreme Court precedent," *Bulger v Curtis*, 328 F Supp 2d 692, 703 (ED Mich, 2004) (emphasis added).[13]

---

[12] Only later, in *People v Harris*, 470 Mich 882 (2004), did we hold that, "[p]ursuant to the analysis provided by this Court in *Bulger*, MCL 770.3a is constitutional."

[13] In light of the Sixth Circuit's conclusion in *Simmons* that *Halbert* is not retroactive under *Teague,* and the dissent's assertion that "*Teague* does not control

17

(5) The dissent complains that we "rel[y] on the presumption that all defendants who plead guilty are indeed guilty." *Post* at 8. When a defendant pleads guilty, he *admits guilt under oath*. We freely admit that there is some sense on our part that "defendants who plead guilty are indeed guilty." By taking an oath, defendants give courts permission to presume that admissions of guilt are true. This Court has made clear that after conviction, defendants are no longer cloaked with a presumption of innocence, *People v Mateo*, 453 Mich 203, 222; 551 NW2d 891 (1996) (Weaver, J., concurring), thereby permitting this Court to presume that those who have pleaded guilty are, in fact, guilty.

More importantly, *Halbert* did not address the ascertainment of guilt, but rather discussed the complexity of appeals and why counsel is often required to navigate this process. *Halbert, supra* at 621 ("Navigating the appellate process without a lawyer's assistance is a perilous endeavor for a layperson . . . ."). Although the opinion refers to "'myriad and often complicated' substantive issues" potentially involved in appeals, at no time does it equate these issues with the ascertainment of guilt. *Id.* (citation omitted).

Moreover, not only are several of the potential appellate issues that the dissent identifies clearly unrelated to questions of guilt (jurisdictional defects, double jeopardy claims, and claims that the state had no right to proceed such as having charged a defendant under an inapplicable statute), but it is nonsensical for

---

the measure of retroactivity applied by a state court," *post* at 7, we see no reason to further discuss the dissent's *Teague* analysis.

18

the dissent to conclude that the Supreme Court determined that claims involving "'constitutional defects that are *irrelevant to [a defendant's] factual guilt*'" apply to the guilt or innocence of a defendant. *Post* at 9 n 2, quoting *Bulger*, *supra* at 561 (Cavanagh, J., dissenting) (emphasis added).

Although we recognize that such procedural matters may well be essential and, in some cases, constitutionally mandated, their existence does not automatically convert them into issues concerning guilt or innocence. The United States Constitution provides criminal defendants the right to due process of law. US Const, Am V. The question of whether a defendant has received due process is different in many contexts from whether a given procedure affects the "integrity of the fact-finding process." *Sexton*, *supra* at 63 (internal citation and quotation marks omitted). By conflating, as the dissent has done, whether a procedure is necessary for due process with whether a procedure ascertains a defendant's guilt or innocence, the dissent would compel that virtually *all* new rules of criminal procedure become retroactive. Perhaps the dissent could explain what new rules would *not* be retroactive under the analysis that he sets forth. And, while such automatic retroactivity may be the dissent's personal preference, *Sexton*'s and *Teague*'s very existence refute that proposition as the preference of the law.

## V. CONCLUSION

For these reasons, we hold that *Halbert* does not apply retroactively to cases in which a defendant's conviction has become final, either under federal or

19

state retroactivity jurisprudence. Accordingly, we affirm the trial court's denial of defendant's motion for relief from judgment.

Stephen J. Markman
Clifford W. Taylor
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                    No. 129693

MARK ALLEN MAXSON,

      Defendant-Appellant.

_____

CAVANAGH, J. (*dissenting*).

Once again, the majority "swerves and dodges the decisions of the United States Supreme Court" to deny indigent defendants access to justice, this time by refusing to retroactively apply the rule of *Halbert v Michigan*, 545 US 605; 125 S Ct 2582; 162 L Ed 2d 552 (2005). See *People v Bulger*, 462 Mich 495, 522; 614 NW2d 103 (2000) (Cavanagh, J., dissenting). Ironically, the majority now applies the same reasoning that the United States Supreme Court rejected in *Halbert* to conclude that *Halbert* should not apply retroactively. I must respectfully dissent.

Before 1994, indigent defendants in Michigan who had pleaded guilty could appeal as of right and were commonly provided with appellate counsel. See, e.g., *People v Ginther*, 390 Mich 436, 444; 212 NW2d 922 (1973). In 1994, the Michigan Constitution was amended to provide that appeal from a guilty or nolo contendere plea was "by leave of the court." Const 1963, art 1, § 20. Some trial courts began to interpret this amendment as abolishing the right to counsel for

indigent defendants who had pleaded guilty. *Halbert*, 545 US at 609. This interpretation was codified by the Legislature in MCL 770.3a, which stated that defendants who plead guilty "shall not have appellate counsel appointed for review," with certain exceptions.

A majority of this Court upheld the constitutionality of MCL 770.3a in *People v Harris*, 470 Mich 882 (2004) (relying on the analysis of *Bulger*, *supra*). The majority came to this conclusion by reasoning that first-tier review of plea-based convictions is discretionary, that plea proceedings are simpler than proceedings at trial, and that a defendant who enters a guilty plea accedes to the state's interest in the finality of criminal proceedings. *Bulger*, 462 Mich at 508, 516-517; see also *Halbert*, 545 US at 613-614. I dissented, urging the United States Supreme Court to "correct the constitutional miscarriage committed by the majority" and to "issue the decision that is uniformly directed by its past opinions." *Bulger*, 462 Mich at 522-523 (Cavanagh, J., dissenting).

The United States Supreme Court did indeed correct the error of *Bulger* and *Harris* in its 2005 *Halbert* decision. There the Court held that MCL 770.3a was unconstitutional and restored the constitutional right to the appointment of counsel for first-tier appellate review for indigent defendants in Michigan who had pleaded guilty. Now the question is whether indigent defendants whose plea-based convictions became final between 1994 and 2005 should have the constitutional relief *Halbert* demands by retroactive application of that decision. The majority

2

arbitrarily cuts off constitutional relief to these indigent defendants, applying the same faulty reasoning it used to deny their constitutional rights in the first place.

The majority concludes that *Halbert* should not apply retroactively under *Teague v Lane*, 489 US 288; 109 S Ct 1060; 103 L Ed 2d 334 (1989). I observe first that *Teague* is inapplicable to this case. The United States Supreme Court has stated that "[a] close reading of the *Teague* opinion makes clear that the rule it established was *tailored to the unique context of federal habeas* and therefore had *no bearing* on whether States could provide broader relief in their own postconviction proceedings than required by that opinion." *Danforth v Minnesota*, ___ US ___; 128 S Ct 1029, 1039; 169 L Ed 2d 859 (2008) (emphasis added). The Court went on to say that "[i]t is a matter that States should be free to evaluate, and weigh the importance of, when prisoners held in state custody are seeking a remedy for a violation of federal rights by their lower courts." *Id.* at ___, 128 S Ct at 1041. Thus, *Teague* does not restrain this Court from providing a remedy that it previously wrongfully denied.

Nonetheless, I believe that even *Teague* counsels retroactive application in this case. *Teague* held that, generally, courts should not retroactively apply rules of criminal procedure that are "new." The rule of *Halbert* is not new. First, and most obviously, the rule of *Halbert* is not new because it reinstated an old rule. See, e.g., *Ginther*, *supra*. *Halbert* merely restores the law that existed in Michigan before 1994. Thus, it is not new.

3

A rule may be new, under *Teague*, if "the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 489 US at 301 (opinion of O'Connor, J.). As I stated in *Bulger*, I believe that the result of *Halbert* was *uniformly directed* by the past decisions of United States Supreme Court. *Bulger*, 462 Mich at 522-523 (Cavanagh, J., dissenting). A rule that is uniformly directed is not new.

The majority opinion concludes that the rule of *Halbert* is not compelled, and thus new, because appeal from a guilty plea in Michigan is by leave and discretionary. It reasons that the application of *Douglas v California*, 372 US 353; 83 S Ct 814; 9 L Ed 2d 811 (1963), was not dictated because *Douglas* involved a first appeal as of right, while the first appeal of plea-based convictions in Michigan is discretionary. The majority opinion further reasons that *Ross v Moffitt*, 417 US 600; 94 S Ct 2437; 41 L Ed 2d 341 (1974), appears to apply because it held that appointment of counsel was not required when appeal is made to a court that has discretion "to choose whether to reach the merits of a defendant's appeal." *Ante* at 4. First, I observe that this very reasoning was rejected by the United States Supreme Court in *Halbert*. The Court stated that "Halbert's case is properly ranked with *Douglas* rather than *Ross*" and, thus, held "that the Due Process and Equal Protection Clauses *require* the appointment of counsel for defendants, convicted on their pleas, who seek access to first-tier review in the Michigan Court of Appeals." *Halbert*, 545 US at 610 (emphasis added).

4

Second, the fact that the defendant's appeal in *Douglas* was as of right was irrelevant to the outcome of that case. Rather, the critical issue was the fact that, "[w]hether formally categorized as the decision of an appeal or the disposal of a leave application, the Court of Appeals' ruling on a plea-convicted defendant's claims provides the first, and likely the only, direct review the defendant's conviction and sentence will receive." *Halbert*, 545 US at 619. In *Ross*, the discretion involved was irrespective of the merits. As the *Ross* Court stated, its ruling applied to appellate courts that may deny leave even when they conclude that the decision on the merits in the court below was incorrect. *Ross*, 417 US at 615. That is not the case when a defendant seeks first-tier review in the Michigan Court of Appeals. See *Bulger*, 462 Mich at 541-542 (Cavanagh, J., dissenting); *Halbert*, 545 US at 617 ("Michigan's intermediate appellate court looks to the merits of the claims made in the application"). Further, *Ross* made clear that its decision applied when a defendant had already "received the benefit of counsel in examining the record of his trial and in preparing an appellate brief on his behalf for the state Court of Appeals" and when "a defendant's claims of error are organized and presented in a lawyerlike fashion to the Court of Appeals . . . ." *Ross*, 417 US at 614-615. That is not the case when a defendant seeks first-tier review in the Michigan Court of Appeals.

Thus, this precedent does not support a claim that a reasonable jurist could conclude that the rule of *Halbert* was not compelled. To the contrary, "[t]he Michigan Supreme Court's reading [of] *Ross* to permit the denial of counsel to an

5

indigent defendant on appeal solely because the appeal is discretionary [is] not a reasonable application of Supreme Court precedent." *Bulger v Curtis*, 328 F Supp 2d 692, 702 (ED Mich, 2004). Because I believe that the rule of *Halbert* was, in fact, compelled by precedent, I believe that the rule is not new. Thus, *Halbert* should apply retroactively. Even if the rule of *Halbert* were new, it would represent a "watershed" decision, which requires retroactive application under *Teague*. *Teague* states that "a new rule should be applied retroactively if it requires the observance of those procedures that . . . are implicit in the concept of ordered liberty." *Teague*, 489 US at 307, 311 (opinion of O'Connor, J.) (internal citations omitted). At issue here is meaningful access to the courts, *Ross*, 417 US at 615, and the essential fairness of state-ordered proceedings, *Halbert*, 545 US at 611. I believe that these are matters that are "implicit in the concept of ordered liberty."

The majority supports its finding to the contrary with the assertion that a state is not required to provide "any appellate proceedings at all for defendants who plead guilty." Again, the United States Supreme Court rejected this reasoning in *Halbert*. The Court reminded that while "[t]he Federal Constitution imposes on the States no obligation to provide appellate review of criminal convictions," nonetheless, once provided, "a State may not bolt the door to equal justice to indigent defendants." *Halbert*, 545 US at 610 (internal citations and quotation marks omitted). I conclude that the rule of *Halbert* fits this exception to *Teague*. It should apply retroactively.

6

This conclusion is supported by the fact that *Douglas*, the case on which the United States Supreme Court based its *Halbert* decision, was applied retroactively. *McConnell v Rhay*, 393 US 2, 3; 89 S Ct 32; 21 L Ed 2d 2 (1968). Observing this application, the Supreme Court grouped *Douglas* with *Gideon v Wainwright*, 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963), as cases implicating the right to counsel and addressing a right that "relates to the very integrity of the fact-finding process." *McConnell*, 393 US at 3 (internal citation and quotation marks omitted). Thus, the majority opinion's attempt to distinguish this case from the sort that announces a "watershed" rule is incorrect. *Ante* at 6-7. *Douglas* was decided on equal protection and due process grounds, just like *Halbert*. Yet the Supreme Court identified *Douglas* as implicating the same right as *Gideon* under a different constitutional provision. Thus, *Douglas* would suggest that, under *Teague*, *Halbert* is a "watershed" rule requiring retroactive application irrespective of the specific constitutional ground on which it was decided.

But, as noted, *Teague* does not control the measure of retroactivity applied by a state court. Rather, Michigan jurisprudence provides the tools for assessment in this case.[1] The majority applies the factors stated in *People v Sexton*, 458 Mich

---

[1] I am aware of the decision in *Simmons v Kapture*, 516 F3d 450 (CA 6, 2008). I am also aware that the petition for writ of certiorari was denied in *Houlihan v Michigan*, ___ US ___; ___ S Ct ___: ___ L Ed 2d ___; 2008 WL 2810188 (October 6, 2008). As noted earlier, these decisions do not prohibit or affect the application of state law to this case.

7

43, 580 NW2d 404 (1998), to conclude that retroactivity is not required in this case. I believe that the *Sexton* factors direct the opposite result.

The first *Sexton* factor, the purpose factor, states that a law may be applied retroactively when it "concerns the ascertainment of guilt or innocence"; however, "a new rule of procedure . . . which does not affect the integrity of the fact-finding process should be given prospective effect." *Id.* at 63 (internal citations and quotation marks omitted). The majority concludes that this factor is inapplicable because "the appointment of counsel on appeal does not concern the ascertainment of guilt or innocence." *Ante* at 9. I strongly disagree. I believe the ascertainment of guilt or innocence is at stake here because "'a correct adjudication of guilt' involves more than just an admission of guilt." *Bulger*, 462 Mich at 560 (Cavanagh, J., dissenting); see also MCR 6.302. "Appeals after guilty pleas, too, directly implicate a procedure without which the accuracy of a conviction cannot be assured." *Simmons v Kapture*, 516 F3d 450, 457 (CA 6, 2008) (Martin, J., dissenting), citing *Halbert*, 545 US at 617. *Halbert* rests precisely on the fact that a defendant's first-tier appeal from a plea-based conviction involves error-correction. In other words, a defendant's guilt or innocence is at stake. Thus, the purpose prong directs retroactive application of *Halbert*.

I observe further that the majority opinion relies on the presumption that all defendants who plead guilty are indeed guilty. *Ante* at 9. As I pointed out in *Bulger*, this misses the entire purpose of a first-tier appeal from a guilty plea, where factors relevant to guilt—such as coercion, ineffective assistance of

counsel, and mental capacity—are meant to be adjudicated.[2]  Correcting these

errors is relevant precisely to the question of guilt or innocence.  In *McConnell*,

*supra*, the United States Supreme Court stated the significance of the issue at

stake:

> This Court's decisions on a criminal defendant's right to counsel at trial, *Gideon v. Wainwright*, 372 US 335 (1963); at certain arraignments, *Hamilton v. Alabama*, 368 US 52 [82 S Ct 157; 7 L Ed 2d 114] (1961); and on appeal, *Douglas v. California*, 372 US 353 (1963), have been applied retroactively.  The right to counsel at sentencing is no different.  As in these other cases, the right being asserted relates to the very integrity of the fact-finding process. [*McConnell,* 393 US at 3 (citations and quotation marks omitted).]

The Supreme Court in *Halbert* observed that the error-correction function of a

first-tier review in the Michigan Court of Appeals was crucial to its conclusions in

that case.  *Halbert*, 545 US at 617.  Where the very integrity of the fact-finding

process is at stake, retroactive application is directed.  Further, the majority's

position here is another way of stating that a defendant who pleads guilty accedes

---

[2] In greater detail, I stated that appeal from a plea-based conviction may involve

> constitutional defects that are irrelevant to [a defendant's] factual guilt, double jeopardy claims requiring no further factual record, jurisdictional defects, challenges to the sufficiency of the evidence at the preliminary examination, preserved entrapment claims, mental competency claims, factual basis claims, claims that the state had no right to proceed in the first place, including claims that a defendant was charged under an inapplicable statute, and claims of ineffective assistance of counsel.  [*Bulger,* 462 Mich at 561 (Cavanagh, J., dissenting) (citations omitted).]

to the state's interest in finality, a proposition the United States Supreme Court rejected in *Halbert*. *Id*. at 623-624.

The second *Sexton* factor is also implicated. This factor addresses the "general reliance on the old rule." *Sexton*, 458 Mich at 60. Addressing this factor, the *Sexton* Court stated that "[j]udicial decisions are generally given complete retroactive effect unless the decisions are unexpected or indefensible." *Id*. at 63-64, citing *People v Doyle*, 451 Mich 93, 104; 545 NW2d 627 (1996). As exhaustively demonstrated in *Halbert*, this rule is neither "unexpected" nor "indefensible."

In this case, injustice will result if *Halbert* is not applied retroactively. The majority's decision in *Bulger* left indigent defendants who pleaded guilty with a "meaningless ritual in our Court of Appeals." *Bulger*, 462 Mich at 581 (Cavanagh, J., dissenting). Failure to apply *Halbert* retroactively means that for a "small group of people arbitrarily caught between Michigan's own protections [before 1994] and the protection offered by *Halbert*, the 'meaningless ritual' of indigent appeals continues to be a harsh and unjust reality . . . ." *Simmons*, 516 F3d at 458 (Martin, J., dissenting). As the United States Supreme Court stated in *Douglas*, the case on which it relied for the rule of *Halbert*, "When society acts to deprive one of its members of his life, liberty or property, it takes its most awesome steps." *Douglas*, 372 US at 358 n 2 (citation and quotation marks omitted). Unless *Halbert* is applied retroactively, defendants whose plea-based convictions became final during the arbitrary period between 1994 and 2005 will

10

be penalized by the general reliance on an unconstitutional ruling of this Court. The second factor of *Sexton* directs retroactive application of *Halbert*.

Finally, the effect on the administration of justice, the third *Sexton* factor, requires retroactive application. The very system of justice administered by this Court rests on the fair application of fundamental rights, such as the right to counsel on first-tier appellate review. As the Supreme Court observed in *Douglas*:

> No general respect for, nor adherence to, the law as a whole can well be expected without judicial recognition of the paramount need for prompt, eminently fair and sober criminal law procedures. The methods we employ in the enforcement of our criminal law have aptly been called the measures by which the quality of our civilization may be judged." [*Douglas,* 372 US at 358 n 2, quoting *Coppedge v United States*, 369 US 438, 449; 82 S Ct 917; 8 L Ed 2d 21 (1962).]

The majority concludes that the effect on the administration of justice counsels against retroactivity because "the state's strong interest in finality of the criminal justice process would be undermined." *Ante* at 14. In *Halbert*, the United States Supreme Court found this argument insufficient to support the denial of appellate counsel to defendants who had pleaded guilty. *Halbert*, 545 US at 623. Further, the majority's contention that retroactive application of *Halbert* would "inundate the appellate process with new appeals" is speculative. *Ante* at 15. As the majority observes, only a small percentage of defendants who pleaded guilty availed themselves of appointed counsel to seek an appeal before such appointment was precluded by the unconstitutional rule of MCL 770.3a. *Ante* at 12-13. Also, appointed counsel would be prohibited from asserting

11

frivolous claims for appeal by Rule 3.1 of the Michigan Rules of Professional Conduct. And the Court of Appeals retains discretion on whether to grant leave to hear appeals from guilty pleas.[3] Const 1963, art 1, § 20. Finally, as the majority also observes, a defendant must consider the risk that an adverse ruling on appeal may result in a more severe penalty. *Ante* at 11; MCR 6.312. Together, these factors suggest that only a small number of cases with genuine and substantial issues for appeal will receive full consideration by our state appellate courts. But even if the number of appeals would be great, as the majority speculates, defendants validly asserting claims of substantial error should be heard in our appellate courts.

It strikes me as an ironic twist to apply the invalid reasoning that the majority originally used in attempting to justify denying these defendants their constitutional right to now deny them review retroactively. I see no reason to deny constitutional rights to defendants on the arbitrary basis that their convictions became final between 1994 and 2005. On the contrary, I believe that failure to

---

[3] Of course, as an error-correcting court, the Court of Appeals must conduct some analysis of each application for leave to appeal before exercising its discretion on whether to hear each case. This analysis is evidently less burdensome than actually hearing an appeal. Additionally, the Court would have the advantage of reviewing arguments that have been researched and briefed by counsel.

apply the rule of *Halbert* retroactively is unreasonable and constitutionally unconscionable.  I must respectfully dissent.

Michael F. Cavanagh
Marilyn Kelly